The United States District Court for the Northern District of Alabama certified the following questions of law to us:
 "1. Can defendant Jan Lewis be held liable under the provisions of § 8-27-3, Code of Alabama 1975, or common law, for continued uses or disclosures of a trade secret, after
notice of alleged appropriation, if Jan Lewis first disclosed or used the trade secret of plaintiff(s), which allegedly had been misappropriated by a third person from whom Lewis learned the trade secret, before Lewis *Page 345 
knew or should have known that the information used or disclosed was a trade secret and that it had been misappropriated by the third person from whom she received the secret?
 "2. Can Lewis be liable if she learned
the secret without notice of its having been obtained by improper means or breach of confidence, but used or disclosed it for the first time after she received such notice?
 "3. Would the answer(s) to 1. or 2. be any different depending on whether the notice to Lewis comes from a plaintiff or another defendant?"
(Emphasis in original.) We note that the district court made the following distinction between the first and second questions:
 "The distinction between the first two questions is that, in the first instance, Lewis used or disclosed before notice, but continued to use or disclose after notice, and, in the second instance, she learned the trade secret without notice, but thereafter obtained notice and then used the secret for the first time."
The following pertinent facts were also provided by the district court for our consideration:
 "[Systems Engineering Associates Corporation, a corporation; Louis Sheppard, an individual; Sherrell Smith, an individual; David Alexander, an individual; and John O. Kramer, Jr., an individual ('Plaintiffs')] ha[ve] sued, among other defendants, a defendant Jan Lewis, for alleged trade secret violations. Defendant Jan Lewis is a district manager of defendant IMED Corporation. Her job duties involve marketing IMED's products. Plaintiffs alleged that after Lewis first disclosed or used the alleged trade secret, she then received notice that the secret had been misappropriated by third person(s) and that Lewis continued to use or disclose the secret after this notice. It is not alleged that said defendant Lewis discovered the trade secret by improper means or that she breached a confidence reposed in her, or that she learned the secret with notice to her of its having been obtained by another by improper means or by breach of confidence. It is alleged that after Lewis had learned the secret and had used or disclosed it, she was put on notice that the secret had been obtained by breach of confidence of person(s) who disclosed it to her, and that she then continued to use or disclose it. In the alternative, it has been alleged, or may be alleged by amendment, that although Lewis did not obtain the secret by improper means or by breach of confidence reposed in her and that she first learned the secret without notice of any such misappropriation, she was later put on notice of the alleged misappropriation before she first used or disclosed the secret, and did after said notice use or disclose the secret."
(Emphasis in original.)
The parties are at issue over whether Lewis can be held liable for misappropriating a trade secret under either the Alabama Trade Secrets Act, Ala. Code 1975, § 8-27-1 et seq. ("the Act"), or the common law doctrine of trade secrets, which was first recognized in Alabama in Drill Parts ServiceCo. v. Joy Manufacturing Co., 439 So.2d 43 (Ala. 1983). The plaintiffs maintain that if it is possible for them to state a claim against Lewis under the Act, then our inquiry need go no further; however, if it is not possible to state a claim under the Act, then, the plaintiffs argue, we must look to the common law to answer these certified questions.
Section 8-27-3 defines "misappropriation" as follows:
 "A person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:
 "(1) That person discovered the trade secret by improper means;
 "(2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other;
 "(3) That person learned the trade secret from a third person, and knew or should have known that (i) the information was a trade secret and (ii) that the trade secret had been appropriated under circumstances *Page 346 which violate the provisions of (1) or (2), above; or
 "(4) That person learned the information and knew or should have known that it was a trade secret and that its disclosure was made to that person by mistake."
(Emphasis added.)
The parties disagree as to what the emphasized language above means. According to the plaintiffs, a person is liable under § 8-27-3 if he obtains information from a third person and then "discloses or uses" that information, knowing, or possessing information from which he should know, at the time of disclosure or use that the information is a trade secret and that it had been misappropriated by the third person. However, Lewis, relying heavily on the comment to § 8-27-3, insists that a person cannot be held liable under § 8-27-3 unless he knew or should have known at the time he learned the information that it had been misappropriated by the third person. We conclude that the plaintiffs correctly interpret the Act.
The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa CountyComm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County,589 So.2d 687 (Ala. 1991).
Section 8-27-3 is not ambiguous. It clearly states that "[a] person who discloses or uses a trade secret of another . . . is liable to the other for misappropriation . . . if . . . [t]hat person learned the trade secret from a third person, and knew or should have known that" he was disclosing or using a misappropriated trade secret. It would require a tortured reading of the statute for us to conclude, as Lewis suggests, that a person cannot be held liable unless he knew or should have known at the time he learned the trade secret that it had been misappropriated by the third person. Our conclusion in this regard is consistent with the purpose of the act — to protect individual property rights in trade secrets and, thereby, to foster the development of new products and technology in this state. The Alabama Law Institute's committee on trade secrets law, which drafted the Act, included the following "Preface" in its proposed legislation:
 "New technology cannot always rely on the patent laws because of the time and the expense involved in obtaining a patent. The state law of trade secrets has been vital in the development of new industry and new technology. Trade secrets law enables those who develop new ideas to call upon the law to help and protect their ideas from misappropriation through espionage and breach of faith.
 "Until the Alabama Supreme Court, in 1983 in Drill Parts [ Service Co.] v. Joy Manufacturing [Co.], 439 So.2d 43, expressly recognized the common law doctrine of trade secrets it was not even clear that the doctrine existed in Alabama. With that decision Alabama businesses could rely on the law of trade secrets. But with only one case many questions remain about the scope and content of trade secret law in Alabama.
 "The Alabama Law Institute Committee on trade secret law has drawn heavily from the common law as embodied in the Restatement of Torts
and case law, and has reviewed the Uniform Trade Secrets Act and the trade secrets acts of other states. The Committee has drafted a forward-looking trade secrets act that will help to make Alabama attractive to high technology and other innovative industries.
 "The Act provides significant protection to trade secret owners while drawing a fairly distinct line between that which is a trade secret and that which is not. Therefore, the users of ideas are secure both in protecting their trade secrets and in knowing what they are free *Page 347 
to use without fear of misappropriating the trade secrets of others."
The Act itself is also illustrative of its purpose.[1] The purpose underlying the Act would surely be thwarted if a person, although innocently acquiring a trade secret from a third person, could nonetheless disclose or use that trade secret with impunity after being placed on notice that the trade secret had been misappropriated by the third person. Likewise, our interpretation of the act is consistent with the common law doctrine of trade secrets, which as previously noted, was recognized approximately four years before the effective date of the Act in Drill Parts Service Co. v.Joy Manufacturing Co., supra. Section 758B,Restatement of Torts (1939), provides:
 "One who learns another's trade secret from a third person without notice that it is secret and that the third person's disclosure is a breach of his duty to the other, or who learns the secret through a mistake a mistake without notice of the secrecy and mistake,
". . . .
 "(b) is liable to the other for a disclosure or use of the secret after the receipt of such notice, unless prior thereto he has in good faith paid value for the secret or has so changed his position that to subject him to liability would be inequitable."
We further point out that our interpretation of the Act is consistent with § 1 of the Uniform Trade Secrets Act, which provides, in pertinent part, as follows:
" 'Misappropriation' means:
". . . .
 "disclosure or use of a trade secret of another without express or implied consent by a person who
". . . .
 "at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was *Page 348 
 "(I) derived from or through a person who had utilized improper means to acquire it;
 "(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
 "(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use. . . ."
We note Lewis's reliance on the comment to § 8-27-3, which states:
 "The section on misappropriation is intended to codify the common law means of misappropriation embodied in the Restatement, namely, (1) 'improper means,' (2) breach of confidence, (3) appropriation from one who misappropriated, but with notice of the prior misappropriation, and (4) appropriation by means of mistake with notice.
 "Unlike Restatement § 758B, proper appropriation without notice of an earlier misappropriation cannot be misappropriation under the statute even if subsequent notice is given. That is, one who loses a trade secret has no recourse against one who innocently received the trade secret. The sole recourse is against the misappropriator. However, this does not alter the fact that the misappropriator is accountable under § 8-27-4 for damages and profits of the misappropriation, including the damages and profits attributable to use of the trade secret by innocent recipients of the trade secret."
However, the comments that follow each section of the Act, which were prepared by the Alabama Law Institute's committee on trade secret law, although perhaps useful in construction, have not been enacted by the legislature and do not necessarily represent legislative intent. See 1987 Alabama Acts, No. 87-669. See, also, Simmons v. Clemco Industries,368 So.2d 509 (Ala. 1979) (official comment to Ala. Code 1975, § 7-2-607, part of the Uniform Commercial Code, held not controlling in light of the clear language of the statute). Although the comment to § 8-27-3 suggests that the committee did not intend to codify § 758B of the Restatement, the clear language of § 8-27-3 indicates that § 758B was, indeed, incorporated into the Act. The "Preface," as well as the comments to the Act, reveals that the committee, in drafting the Act, drew heavily from both the Restatement and the Uniform Trade Secrets Act. Although it appears at first blush that § 8-27-3 is merely a codification of § 757 of the Restatement, which, admittedly, could not form the basis for a claim against Lewis under the facts presented in this case, a close comparison of the Act with §§ 757 and 758B of the Restatement, and with the Uniform Trade Secrets Act, indicates that there is a substantial difference between the language of the Act and the language utilized in § 757. Section 757 states, in pertinent part, that "[o]ne who discloses or uses another's trade secret . . . is liable to the other if . . . helearned the secret from a third person withnotice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other." (Emphasis added.) The Uniform Trade Secrets Act, in pertinent part, defines "misappropriation" as the "disclosure or use of a trade secret of another . . . by a person who . . . at the time of disclosure or use, knew or had reason toknow that the trade secret had been misappropriated by the third person." (Emphasis added.) Thus, it appears that the Uniform Trade Secrets Act incorporated the principles of § 758B of the Restatement and that the language of the Uniform Trade Secrets Act was incorporated into the Act. Although the comment to § 8-27-3 is troubling[2] and, given the underlying purpose of the Act, causes us to wonder what the *Page 349 
committee had in mind, we are bound under well established rules of statutory construction to interpret the language of § 8-27-3 to mean exactly what it says and to give effect to the apparent intent of the legislature. Tuscaloosa CountyCommission v. Deputy Sheriffs' Association of TuscaloosaCounty, supra.
Accordingly, in response to the first two questions, we hold that Lewis can be held liable under § 8-27-3, and we pretermit any discussion as to whether the plaintiffs could also state a claim under the common law.
With regard to the third question, § 8-27-3 imposes liability on a person who, having obtained a trade secret from a third person, discloses or uses the trade secret after receiving sufficient information to put him on notice that the trade secret was misappropriated by the third person. The purpose of the Act, as previously noted, is to protect the work product of those who develop new products and technology. Consequently, we can discern no logical reason for differentiating between defendants based on the source of their knowledge. Therefore, we answer the third question in the negative.
QUESTIONS ANSWERED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Section 8-27-2 provides the following definitions:
 "As used in this chapter, the following terms shall have the following meanings, respectively, unless the context clearly indicates otherwise:
"(1) TRADE SECRET. A 'trade secret' is information that:
"a. Is used or intended for use in a trade or business;
 "b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
 "c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
 "d. Cannot be readily ascertained or derived from publicly available information;
 "e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"f. Has significant economic value.
"(2) IMPROPER MEANS. 'Improper means' are means such as:
"a. Theft;
"b. Bribery;
"c. Misrepresentation;
"d. Inducement of a breach of confidence;
"e. Trespass; or
 "f. Other deliberate acts taken for the specific purpose of gaining access to the information of another by means such as electronic, photographic, telescopic or other aids to enhance normal human perception, where the trade secret owner reasonably should be able to expect privacy.
 "(3) PERSON. A 'person' is a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity."
Section 8-27-4 provides the following remedies for an "actual or threatened" misappropriation:
 "The remedies available for actual or threatened misappropriation of a trade secret are:
"(1) To the extent that they are not duplicative:
 "a. Such injunctive and other equitable relief as may be appropriate with respect to any actual or threatened misappropriation of a trade secret,
 "b. Recovery of any profits and other benefits conferred by the misappropriation that are attributable to the misappropriation . . . and
 "c. The actual damages suffered as a result of the misappropriation;
"(2) Reasonable attorney's fees to the prevailing party if:
 "a. A claim of actual or threatened misappropriation is made or resisted in bad faith.
 "b. A motion to terminate an injunction is made or resisted in bad faith, or
"c. Willful and malicious misappropriation exists; and
 "(3) Exemplary damages in an amount not to exceed the actual award made under subdivision (1), but not less than $5,000.00, if willful and malicious misappropriation exists."
[2] We do not understand the following sentence from the comment:
 "Unlike Restatement § 758B, proper appropriation without notice of an earlier misappropriation cannot be misappropriation under the statute even if subsequent notice is given."
Section 758B does not impose liability on a person who innocently obtains a trade secret from a third person, discloses or uses it, and then receives notice that the trade secret was misappropriated by the third person, as the committee apparently believed. See, also, T. Long, TheAlabama Trade Secrets Act, 18 Cum.L.Rev., 557 (1988). Section 758B imposes liabilities only if the person discloses or uses the trade secret after receiving notice.