MURDOCK, Judge.
John Wesley Boyd appeals from a protection-from-abuse order entered against him by the Madison Circuit Court after a proceeding under the “Protection from Abuse Act.” See Ala.Code 1975, § 30-5-1 et seq. We affirm.
In general, the Protection from Abuse Act was enacted:
“(1) To assure victims of domestic violence the maximum protection from abuse that the law can provide.
“(2) To create a flexible and speedy remedy to discourage violence and harassment against family members or others with whom the perpetrator has continuing contact.
“(3) To expand the ability of law enforcement officers to assist victims, to enforce the law effectively in cases of domestic violence, and to prevent further incidents of abuse.
*150 “(4) To facilitate equal enforcement of criminal law by deterring and punishing violence against family members and others who are personally involved with the offender.
“(5) To recognize that battering is a crime that will not be excused or tolerated.
“(6) To provide for protection orders to prevent domestic abuse and provide for court jurisdiction and venue; to provide for court hearing for petitions for relief; to provide for the contents and the issuance of protection orders; and to provide penalties for violations of protection orders.”
Ala.Code 1975, § 30-5-l(b). The legislature has directed this court to “liberally construed and appl[y] [the Act] to promote” its purposes. Id.
In November 2005, Kristin L. Ottman filed a form “Petition for Protection from Abuse” in the Madison Circuit Court. See Ala.Code 1975, § 30-5-5(b) (“Forms for petitions, motions, and pleadings shall be available through the clerk’s office.”). Ott-man checked certain boxes on the form so as to allege that she and Boyd “ha[d] lived together” and that Boyd had injured her. Where the form requested a description of the alleged abuse, Ottman stated that Boyd had “hit, kicked, threw, and choked” her. She also stated that “[t]he physical abuse has occurred on several occasions.” Ottman requested that the trial court enter a restraining order against Boyd.
After Ottman filed her petition, the trial court entered an ex parte order restraining Boyd from committing further acts of abuse against Ottman and restraining Boyd from contact with Ottman until further order of the court. A few weeks later, it conducted an ore tenus proceeding concerning Ottman’s petition.
Only Boyd and Ottman testified at trial. At the conclusion of Ottman’s testimony, Boyd made an oral motion for the trial court to dismiss Ottman’s petition because, he said, Ottman had failed to establish that he was a “family or household member” as described in Ala.Code 1975, § 30 — 5—2(a)(4). The trial court denied the motion. Thereafter, the trial court entered an order finding that Boyd had committed domestic violence against Ottman. The trial court adopted the terms of its ex parte order as its final order, and it stated that the restraining order was to remain in effect for 10 years.
Boyd appeals, contending that the trial court erred when it entered the proteetion-from-abuse order against him because, according to Boyd, he was never a member of the same “household” as Ottman.[1]
We note that the Protection from Abuse Act (the “Act”) authorizes the trial court to enter “any order of protection ... for the purpose of preventing acts of abuse,” as that term is defined in the Act. Ala.Code 1975, § 30-5-2(a)(6). The Act defines “abuse” as
“[t]he occurrence of one or more of the following acts, attempts, or threats between family or household members, as defined by this chapter:
“a. Assault. Assault as defined under Sections 13A-6-20 to 13A-6-22, inclusive.
“b. Attempt. With the intent to commit any crime under this section or any other criminal act under the laws of this state, performing any overt act towards the commission of the offense.
[[Image here]]
*151 “e. Harassment. Harassment as defined under Section 13A-11-8.
[[Image here]]
“g. Menacing. Menacing as defined under Section 13A-6-23.
“h. Other conduct. Amy other conduct directed toward a member of the protected class covered by this chapter that could be punished as a criminal act under the laws of this state.
“i. Reckless endangerment. Reckless endangerment as defined under Section 13A-6-24.”
Ala.Code 1975, § 30-5-2(a)(l).
Section 30 — 5—2(a)(4) defines “family or household members” as “[a] spouse, former spouse, parent, child, or any other person related within the 6th degree consanguinity or affinity or common-law marriage, a person with whom the plaintiff has a child in common, or a present or former household member.” (Emphasis added.)
“[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.” Philpot v. State, 843 So.2d 122, 125 (Ala.2002). Also, when a trial court makes no specific findings of fact, “this Court will assume that the trial judge made those findings necessary to support the judgment.” Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992). On review of issues as to which the ore tenus standard is applicable, “ ‘appellate courts are not allowed to substitute their own judgment for that of the trial court if the trial court’s decision is supported by reasonable inferences to be drawn from the evidence.’ ” Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331, 345 (Ala.2002)(quoting Ex parte Pielach, 681 So.2d 154, 155 (Ala.1996)). Further, this court must “review the evidence in a light most favorable to the prevailing party.” Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993).
It is undisputed that Boyd and Ott-man had a romantic relationship for approximately one year before the trial. It is also undisputed that Boyd and Ottman each had their own house. However, there was conflicting testimony concerning what time periods Boyd spent in Ottman’s house. Ottman, who appeared pro se, testified as follows:
“THE COURT: You allege in your petition ... that you and Mr. Boyd lived together.
“MS. OTTMAN: He stayed at my house for months at a time.
“THE COURT: Tell me about that. When did he first move in and how long did he stay.
“MS. OTTMAN: The longest he stayed was two and a half, three months. After my brother passed away he stayed.
“THE COURT: And what was your relationship? Boyfriend, girlfriend?
“MS. OTTMAN: Boyfriend.
“THE COURT: Had you had a dating relationship before he moved in?
“MS. OTTMAN: Yes.
“THE COURT: And he lived there two and a half months?
“MS. OTTMAN: It was stretches at a time. When the fights would happen he would leave and go back to his house.
“THE COURT: When he lived with you, did he stay overnight every night for that period of time?
“MS. OTTMAN: Yes.
“THE COURT: What would you do in the morning?
*152 “MS. OTTMAN: Get up and go to work. I worked third shift. He would get up and go to work.
“THE COURT: Would he come homé at night after work.
“MS. OTTMAN: Yes.
“THE COURT: How many times did this happen that he stayed with you for an extended period of time also?
“MS. OTTMAN: I couldn’t count the times we broke up in between. The longest stretch was two and half, three months. When the fight would happen, he would leave.
“THE COURT: When was the last time you and he resided in your residence.
“MS. OTTMAN: He stayed with me for two weeks before the last physical altercation.”
The last physical altercation allegedly occurred a few days before Ottman filed her petition.
On cross-examination, Ottman testified:
“Q. Ms. Ottman, during this two and a half, three months period, he would actually go home and get his own clothing, come back to his house?
“A. Not his clothes. They were at my house.
“Q. This has been several months ago since that happened, correct?
“A. Yes.
“Q. Okay. Because you haven’t had an ongoing relationship, living overnight since, you said, last two weeks. But previous to that it’s been several months before you actually — he actually stayed overnight; correct?
“A. No, he’d stayed there several nights.
[[Image here]]
“Q. What address do you live at?
“A. 3816 Cooper Street.
“Q. What address does he live at?
“A. On Dellbrook.
[[Image here]]
“Q. That’s been his residence since you’ve dated or known him; correct?
“A. Yes.
“Q. So he hasn’t — he has had that physical address since you’ve known him?
“A. Yes. He lived at my house.
[[Image here]]
“Q. He’s been living there for as long as you know?
“A. Unless he was at my house, yes.
“Q. You’ve had a girlfriend, boyfriend relationship. He has stayed with you overnight on occasion; correct?
“A. For months at a time.
[[Image here]]
“Q. You’ve never held yourself out to paying bills, joint checking accounts, anything like that?
“A. No. He’s offered to pay bills.”
In contrast to Ottman’s testimony, Boyd testified that he “may stay a week at a time or something” at Ottman’s house, but that he would go back to his house to get his clothing. Boyd denied that he actually lived with Ottman; however, he later testified:
“THE COURT: The longest period of time you say you lived there was a week?
“[BOYD]: Yes, sir.
“THE COURT: Seven straight nights or six straight nights?
“[BOYD]: Yes.
“THE COURT: How many times did you do that?
“[BOYD]: I don’t know over a period of a year.
“THE COURT: Did y’all share a bedroom?
*153 “[BOYD]: Yes, sir.”
There is no question that Boyd is not a “family member” under § 30-5-2(a)(4). Thus, Boyd is only subject to the Act if he is a “household member” as that term is used in the Act. In light of the foregoing testimony and the requirement that we view the evidence in the light most favorable to Ottman, the question in the present case becomes whether Boyd is a “household member” in relation to Ottman, even though Boyd has his own separate house, because he lived in Ottman’s house for weeks at a time during the year preceding the filing of the petition, including one stay that extended for at least two and one-half months and a final stay that extended for the two weeks immediately preceding the filing of the petition.
The parties have cited no decisions from this court or our Supreme Court of significant precedential value for purposes of deciding this case.[2] Accordingly, the case appears to require us to interpret and apply the Act as a matter of first impression to the facts presented. In Norfolk Southern Railway Co. v. Johnson, 740 So.2d 392, 396 (Ala.1999), our Supreme Court stated:
“This Court has held that the fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting a statute. IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). If possible, a court should gather the legislative intent from the language of the statute itself. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985).... The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687, 689 (Ala.1991)(citing Ex parte Holladay, 466 So.2d 956 (Ala.1985)).”
As noted above, the Act defines “family or household member” to include two classes of persons: (1) certain persons related to the alleged victim by “consanguinity or affinity,” i.e., by blood or marriage, and (2) “a present or former household member.” Ala.Code 1975, § 30-5-2(a)(4). The Act provides no further definition of the term “household member.”[3] One of the stated purposes of the Act, however, is “[t]o create a flexible and speedy remedy to discourage violence and harassment against family members or others unth *154 whom the perpetrator has continuing contact.” Ala.Code 1975, § 30-5-l(b)(2). Furthermore, the legislature has directed this court to “liberally construe[] and applfy] [the Act] to promote” its purposes. Ala.Code 1975, § 30-5-l(b).
In light of the above-stated purpose of the Act and the above-stated directive of our legislature, this court cannot ignore the juxtaposition of the term “family members” and “others with whom the perpetrator has continuing contact” in § 30-5-1(b)(2), when understanding the meaning of “family or household members” in § 30-5-2(a)(4). All of the persons described in § 30-5-2(a)(4) before the phrase “or a present or former household member” are persons who are related to the alleged victim either by consanguinity or affinity. In other words, they are persons who are, or were, part of the victim’s immediate or extended family, either based upon a blood or marital relationship. We therefore construe the phrase “present or former household member” as not being limited to “family members” as contemplated by § 30-5-2(a)(4), but as including persons who satisfy the “continuing contact” provision of § 30 — 5—1 (b) (2).
To decide the present case, it is not necessary that we determine the exact universe of relationships covered by the Act. Given the stated purpose of the Act and the legislature’s admonition that the Act be liberally construed, we are clear to the conclusion that the facts of the present case qualify Boyd as a “household member” under the Act. Accordingly, the trial court’s judgment is due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, PITTMAN, and BRYAN, JJ., concur.

. Although Boyd repeatedly asserts that the trial court lacked jurisdiction in this case, his argument, and the pertinent legal authority he cites in support of his argument, is actually to the effect that no cause of action existed against him under § 30-5-2.

. In Haraway v. Phillips, 841 So.2d 275 (Ala.Civ.App.2002), this court concluded that the Act did not apply to a person who previously dated one of the alleged victims for a brief time. The evidence reflected that the alleged perpetrator in Haraway was never married to his former girlfriend (one of the alleged victims); that he was not related to his former girlfriend’s husband (the other alleged victim); and, that, according to the opinion, he “was never a 'household member’ in either [the husband’s] or the [former girlfriend’s] household.” Id. at 276. Haraway does not reflect whether the alleged perpetrator ever resided with his former girlfriend.

. The Act states that ”[t]erms not otherwise defined by this chapter shall have the meaning given to them in Title 13A (commencing with Section 13A-1-1), known as the Alabama Criminal Code or other provisions of law, as the case may be.” Ala.Code 1975, § 30-5-2(b). The Alabama Criminal Code does not provide a definition for the term “household member," although a few sections of the Criminal Code discuss the crime of domestic violence as involving a victim who is "a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant.” Ala.Code 1975, §§ 13A-6-130(a), 13A-6-131(a), and 13A-6-132(a). We have been directed to no other pertinent "provision of law” defining the term "household member.”