972 So.2d 81 (2007)
Joyce P. TROTT, as the dependent widow of Ronald D. Trott, deceased, and as personal representative of the estate of Ronald D. Trott, deceased
v.
BRINKS, INC., et al.
1050895.
Supreme Court of Alabama.
May 4, 2007.
*82 William W. Smith and Nicole Judge of Smith & Alspaugh, P.C., Birmingham, for plaintiff.
Adrian D. Johnson of Parnell & Crum, P.A., Montgomery, for defendants.
SMITH, Justice.
The United States District Court for the Northern District of Alabama has certified the following question pursuant to Rule 18, Ala. R.App. P.: "Whether an employer's insurance carrier is entitled to be reimbursed for medical expenses from amounts recovered from a third party in a wrongful death action filed by the employee decedent's personal representative?" This Court accepted the question; we now answer it in the negative.

Facts and Procedural History
In certifying this question, the federal district court set forth the facts of this case:
"On the morning of August 23, 2000, [Ronald D.] Trott, age 64, went to his job at Brinks, Inc. (`Brinks') in Birmingham where he was employed as a driver of armored trucks. On this particular day, Mr. Trott rode in the back of the truck with a co-employee, while two other employees rode in the front of the vehicle as they traveled to deliver bags of coins stored in the back of the truck to various locations.
"On Highway 72, about twelve miles outside of Huntsville, the driver of the truck ran off the side of the road causing the truck to overturn in an upside [down] position. During the rollover, Mr. Trott broke ten ribs, [his] right hip, left shoulder and cracked his backbone. While recovering from hip surgery, Mr. Trott's lung collapsed and he underwent another surgery. Ultimately it was determined that he suffered severe and irreversible internal injuries during the collision that resulted in his death on October 11, 2000. During the course of treatment, Mr. Trott incurred $415,098 of medical bills which were paid by his employer and/or its insurance carrier, [Liberty Mutual Insurance Company (`Liberty Mutual')].
"Joyce [P.] Trott, the widow of Mr. Trott [and the administratrix of Mr. Trott's estate], filed a wrongful death action against Indiana Mills and Manufacturing, Inc. (`IMMI') on November 11, 2000 in the Circuit Court of Jefferson County. In her complaint, Mrs. Trott maintains that her husband was securely belted in the rear suspension seat prior to and during the rollover incident and that the seatbelt, manufactured by the defendant IMMI, unlatched at some point during the rollover. Release of the belt, she claims, caused the traumatic and ultimately fatal injuries which would not have occurred had the seatbelt held.
"After the case was removed to this Court, Liberty Mutual was allowed to intervene as a party plaintiff in the underlying *83 action to preserve its subrogation interest.
"Liberty Mutual contends that it is entitled to be reimbursed both for death benefits and medical expenses paid to Mrs. Trott from any amount recovered in a third party action against the defendant IMMI and for medical benefits paid on behalf of Mr. Trott during his lifetime. Mrs. Trott disputes only the right of reimbursement for medical benefits paid on behalf of Mr. Trott during his lifetime. She maintains that recovery for medical expenses in a wrongful death action is inconsistent both with Ala. Code, 1975 § 25-5-11 and with the principles of subrogation. . . . "
(Footnote omitted.)

Discussion
Alabama Code 1975, § 25-5-11, provides, among other things, an employee the right to maintain an action against an employer for workers' compensation benefits in connection with an on-the-job injury while at the same time pursuing an action for damages against a third party for that same injury. Section 25-5-11 further allows a dependent of a deceased employee to file a wrongful-death action under Ala. Code 1975, § 6-5-410, against third parties for the wrongful death of the employee. Millers Mut. Ins. Ass'n v. Young, 601 So.2d 962 (Ala.1992).
In addition to providing employees and their dependents the right to maintain actions against third parties, § 25-5-11(a) also provides an employer with a general right to be reimbursed out of any damages award for workers' compensation benefits it has paid. Alabama Code 1975, § 25-5-1(4), defines "employer" to include an employer's insurer; thus, the word "employer" in this opinion includes both Brinks, Inc., and Liberty Mutual Insurance Company. If an employer has paid workers' compensation benefits to an employee or death benefits to the dependents of a deceased employee, then the employer may be reimbursed for those benefits from any damages award received in the action against the third party: "To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death." Ala.Code 1975, § 25-5-11(a).
This Court has held that § 25-5-11(a) allows an employer to intervene in a wrongful-death action to be reimbursed for benefits or compensation it paid. Ex parte Cincinnati Ins. Co., 689 So.2d 47 (Ala. 1997); Millers Mut. Ins. Ass'n v. Young, supra. Before 1992, § 25-5-11 allowed reimbursement only for "compensation," which this Court had concluded did not include medical expenses. See Liberty Mut. Ins. Co. v. Manasco, 271 Ala. 124, 123 So.2d 527 (1960). Thus, although an employer could be reimbursed for any workers' compensation benefits or death benefits paid to the employee or the deceased employee's dependents, the employer could not be reimbursed for medical benefits expended to care for the injured employee. In 1992, § 25-5-11(a) was amended to add the following language, which is pertinent in the instant case: "For purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee." (emphasis added); see Ala. Acts 1992, No. 92-537, § 8 (effective May 19, 1992).[1]
*84 Trott argues that the word "subrogation" in § 25-5-11(a) refers to the equitable remedy of subrogation and that it includes all the various rights and defenses attached to that remedy. Under equitable subrogation, a subrogee (here, the employer) has no greater rights than the subrogor (the employee); thus, the subrogee is entitled to only those remedies to which the subrogor is entitled, and no greater remedies. The instant action is a wrongful-death action under Ala.Code 1975, § 6-5-410. In such a case, the only recoverable damages are punitive damages intended to punish the tortfeasor for its actionsnot to compensate the plaintiff. Medical expenses, such as those Liberty Mutual seeks to recover here, are compensatory in nature and are not recoverable by a plaintiff in a wrongful-death action. Thus, Trott argues, because she, as the representative of Ronald Trott's estate, could not recover damages from Indiana Mills and Manufacturing, Inc., for medical *85 expenses, Liberty Mutual could not recover such damages either. In other words, Trott contends, Liberty Mutual cannot recover damages for medical expenses in a wrongful-death action when Trott herself cannot recover such expenses.
"The fundamental principle of statutory construction is that words in a statute must be given their plain meaning." Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003). "When a court construes a statute, `[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.'" Ex parte Berryhill, 801 So.2d 7, 10 (Ala. 2001) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). Additionally, "`[c]ourts must liberally construe the workers' compensation law "to effectuate its beneficent purposes," although such a construction must be one that the language of the statute "fairly and reasonably" supports.'" Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003)(quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala.1985)).
Section 25-5-11(a) provides that an employer has a right to "reimbursement" of compensation and benefits. As to medical benefits, however, the Code section states something different: "the employer shall be entitled to subrogation for medical and vocational benefits." The use of two different terms"reimbursement" and "subrogation"is a distinction that we infer has meaning. The 1992 amendment specifically used the term "reimbursement" in reference to compensation and "subrogation" in reference to medical benefits. "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended. . . . The use of different terms within related statutes generally implies that different meanings were intended." 2A Norman Singer, Sutherland on Statutes and Statutory Construction § 46:06, at 194 (6th ed.2000) (footnotes omitted).[2] We presume that the use of two different words indicates that the legislature intended the two words be treated differently.
"Reimbursement" is a broad term implicating a simple repayment or indemnification. Black's Law Dictionary 1312 (8th ed.2004). Prior decisions interpreting this term for purposes of § 25-5-11(a) have interpreted it to refer to the repayment of compensation from the proceeds of an action against a third party, whether a negligence action or a wrongful-death action. Thus, an employer who had paid workers' compensation benefits, including disability or death benefits, is entitled to be reimbursed for those payments, even from a punitive-damages award. See, e.g., Millers Mut. Ins. Ass'n v. Young, supra (an employer may be reimbursed from the punitive-damages award in a wrongful-death action filed by a deceased employee's estate for death benefits the employer has paid).
This Court, however, has equated the word "subrogation" in § 25-5-11(a) specifically *86 with the equitable doctrine of subrogation. In Ex parte BE&K Construction Co., 728 So.2d 621 (Ala.1998), an employee who was injured on the job filed an action against his employer seeking workers' compensation benefits; the employee also filed an action against a third party based on the same incident. The employee settled the third-party action, and the employer sought to recoup from the settlement the disability benefits and medical expenses it had paid the employee, as well as to withhold future medical benefits that could be recouped from the settlement.
This Court, in holding that § 25-5-11(a) allowed an employer to withhold future medical benefits that it would be required to pay, held:
"A number of states have enacted statutes specifically providing the employer or its insurer subrogation as to the amounts it pays for the employee's future medical expenses. In situations, however, where state legislatures were not as precise in dealing with the issue of subrogation rights, courts have held that an insurer may withhold payment of future medical benefits until the recovery from a third-party tortfeasor is exhausted, at which time the insurer would resume payment. Further, Professor Larson, in his treatise on workers' compensation, reasons that `if the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid . . . the correct holding is still that the excess of the third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier.' A. Larson, Workmen's Compensation Law, § 74-31(e), p. 14-471 (1989 & Supp. 1990).
"We conclude that the Legislature . . . did not intend to limit subrogation to benefits that had been paid, but intended, as Professor Larson suggested, that the excess of the third-party recovery over the amount paid in past medical and vocational benefits should stand as a credit against future liability. Stated differently, we believe the Legislature intended that the law of subrogation apply. This Court has held:
"`The entire law of subrogation, conventional or legal, is based upon equitable principles. The equitable considerations that are the underpinnings of subrogation are (1) that the insured should not recover twice for a single injury, and (2) that the insurer should be reimbursed for payments it made that, in fairness, should be [made] by the wrongdoer.'
"Powell v. Blue Cross & Blue Shield, 581 So.2d 772, 774 (Ala.1990) (citations omitted); quoted in American Economy Ins. Co. v. Thompson, 643 So.2d 1350, 1352 (Ala.1994).
BE&K, 728 So.2d at 623-24. This passage in BE&K equates the term "subrogation" in § 25-5-11(a) with "equitable subrogation."
The 1992 legislation amending 25-5-11(a) used this term instead of "reimbursement," which was retained in other portions of the Code section, and we believe that the legislature's use of two different words indicates a distinction between the terms. We thus hold that the term "subrogation" as used in § 25-5-11(a) refers to the equitable doctrine of subrogation. BE&K, supra.[3]
*87 Under the equitable doctrine of subrogation, "a subrogee steps into the shoes of its subrogor and that subrogee only gets those rights that its subrogor has. The subrogee can have no greater rights." Star Freight, Inc. v. Sheffield, 587 So.2d 946, 958 n. 5 (Ala.1991). Because Liberty Mutual would not be able to recover medical expenses from Indiana Mills and Manufacturing if it were to step into Trott's shoes in the wrongful-death action, we hold that the Liberty Mutual's right to subrogation under § 25-5-11(a) similarly would not allow the recovery of medical benefits from the proceeds of Trott's wrongful-death action.
This is in accord with the equitable principles stressed in BE&K. To deny "subrogation" in this instance would not cause Trott to "recover twice for a single injury" because medical expenses are not recoverable in a wrongful-death action. Because the wrongdoer cannot be required to pay damages for medical expenses, the employer cannot argue that it "should be reimbursed for payments it made that, in fairness, should be [made] by the wrongdoer." BE&K, 728 So.2d at 624.
Liberty Mutual points out that the Court of Civil Appeals, in a factually similar case, held that an employer was entitled to recover medical benefits under § 25-5-11(a) in a wrongful-death action. See Municipal Workmen's Comp. Fund, Inc. v. Jolly, 709 So.2d 1230 (Ala.Civ.App. 1997). However, that decision does not analyze the distinction between the words "reimbursement" and "subrogation" in § 25-5-11(a) or explain how it reached its conclusion. Additionally, the court purported to rely on the authority of Millers Mut. Ins. Ass'n v. Young, supra, a case that involved the reimbursement of death benefits from a damages award in a wrongful-death action, not medical benefits. We therefore decline to follow the rationale of Jolly.

Conclusion
We answer the district court's certified question in the negative: under § 25-5-11(a), an employer is not entitled to be reimbursed for medical benefits from amounts recovered from a third party in a wrongful-death action filed by the employee-decedent's personal representative.
QUESTION ANSWERED.
COBB, C.J., and LYONS, WOODALL, and PARKER, JJ., concur.
SEE, STUART, BOLIN, and MURDOCK, JJ., concur specially.
SEE, Justice (concurring specially).
I concur in the main opinion. I write specially to clarify my understanding of Ala.Code 1975, § 25-5-11.
Under Ala.Code 1975, § 25-5-11(a), if a third party is found liable for an injury to an employee, then "[t]o the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death." "Compensation" is defined in § 25-5-1(1) as "[t]he money benefits to be paid on account of injury or death . . ."; however, expressly excluded from the definition of compensation are "medical and surgical treatment and attention, medicine, medical and surgical supplies, and crutches and apparatus furnished an employee on account of an injury." Thus, the statutory right of the employer to "reimbursement" does not include a right to reimbursement for medical expenses paid to, or on behalf *88 of, the employee. Liberty Mutual paid for Ronald D. Trott's medical treatment, and because the payment was for medical treatment, Liberty Mutual is not entitled to "reimbursement" under § 25-5-11(a).
Section 25-5-11(a) does provide that "the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee. . . ." Thus, under § 25-5-11(a), Liberty Mutual has a subrogation right. Under the circumstances of the case before us, however, this right is of no value to Liberty Mutual. "Under the general principles of subrogation[,] a subrogee steps into the shoes of its subrogor and that subrogee only gets those rights that its subrogor has. The subrogee can have no greater rights." Star Freight, Inc. v. Sheffield, 587 So.2d 946, 958 n. 5 (Ala. 1991). In this case, Ronald D. Trott, the employee, is deceased, and, therefore, has no right to the recovery of medical expenses under Alabama law. As the main opinion explains,
"[m]edical expenses, such as those Liberty Mutual seeks to recover here, are compensatory in nature and are not recoverable by a plaintiff in a wrongful-death action. . . .
". . . .
". . . Because Liberty Mutual would not be able to recover medical expenses from Indiana Mills and Manufacturing if it were to step into Trott's shoes in the wrongful-death action, we hold that Liberty Mutual's right to subrogation under § 25-5-11(a) similarly would not allow the recovery of medical benefits from the proceeds of Trott's wrongful-death action."
972 So.2d at 84-87. All such rights to recover medical benefits have been extinguished and replaced by the right to punitive damages measured only by the wrongfulness of the act that caused the death. See Ala.Code 1975, § 6-5-410; Huckaby v. East Alabama Med. Ctr., 830 F.Supp. 1399, 1403 (M.D.Ala.1993) ("It is only where the plaintiff has filed a personal injury action before his death, and then dies, that both the wrongful death and personal injury claims may be maintained."); Airheart v. Green, 267 Ala. 689, 692, 104 So.2d 687, 690 (1958) ("`[Wrongful-death] damages are entirely punitive, imposed for the preservation of human life. . . . The punishment by way of damages is intended not alone to punish the wrongdoer, but as a deterrent to others similarly minded.'" (quoting Liberty Nat'l Life Ins. Co. v. Weldon, 267 Ala. 171, 190, 100 So.2d 696, 713 (1957))). Thus, Liberty Mutual, as the subrogee of Trott's rights, has no claim for Trott's medical expenses.
Liberty Mutual argues that this Court should construe the term "subrogation" to mean "reimbursement," thereby allowing it to recover its medical expenses out of the judgment in the wrongful-death action; however, the legislature is presumed to know the difference between the terms "reimbursement" and "subrogation." Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003) ("[This Court] will presume that the Legislature knew the meaning of the words it used when it enacted the statute."). I note that the legislature uses the terms "reimbursement" and "subrogation" in the same paragraph, indicating that, though well aware of the possibility that it could again use the term "reimbursement," it chose instead to use term "subrogation" when it defined the employer's claim to medical expenses. We presume that when the legislature uses two different terms, it means two different things.[4]
*89 Because Alabama's wrongful-death statute permits recovery of only punitive damages, it may be that just as death benefits are reimbursable from a punitive-damages award in a wrongful-death action, other funds paid to or on behalf of the insured also should be reimbursable from the award, or it may be that the right to recover for medical expenses should survive the death of the insured; however, "the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama." Boles v. Parris, 952 So.2d 364, 367 (Ala.2006). "Matters of policy are for the Legislature and, whether wise or unwise, legislative policies are no concern to the courts." Marsh v. Green, 782 So.2d 223, 231 (Ala.2000).
I, therefore, concur in the main opinion.
STUART and BOLIN, JJ., concur.
MURDOCK, Justice (concurring specially).
I concur in the main opinion. I write separately to add that the holding in this case is in accord with a certain portion of this Court's holding in Ex parte BE&K Construction Co., 728 So.2d 621 (Ala.1998), and the holdings of this Court in two other cases. Specifically, this Court explained in BE&K that "in situations where the injured employee recovers from a third-party tortfeasor, the amount of that recovery attributable to the employee's medical or vocational expenses" is to be applied against the worker's compensation insurer's obligation for those expenses and that the trial court must "determine, using equitable principles applicable to subrogation rights, which part of [the employee's] settlement is attributable to his medical expenses." 728 So.2d at 624 (emphasis added). Likewise, our holding today is in accord with this Court's opinion in Ex parte Miller & Miller Construction Co., 736 So.2d 1104, 1105 (Ala.1999), in which this Court also stated that the trial court was required "to determine, using equitable principles applicable to subrogation rights, which part of [the employee's] settlement is attributable to medical expenses," and this Court's opinion in Ex parte Williams, 895 So.2d 924, 929 (Ala. 2004), explaining that "[w]here the evidence indicates that the employee will incur future medical and vocational expenses, the trial court must determine the portion of the settlement or judgment that is reasonably attributable to those future medical and vocational expenses."
NOTES
[1] Section 25-5-11(a) now provides in its entirety:

"(a) If the injury or death for which compensation is payable under Articles 3 or 4 of this chapter was caused under circumstances also creating a legal liability for damages on the part of any party other than the employer, whether or not the party is subject to this chapter, the employee, or his or her dependents in case of death, may proceed against the employer to recover compensation under this chapter or may agree with the employer upon the compensation payable under this chapter, and at the same time, may bring an action against the other party to recover damages for the injury or death, and the amount of the damages shall be ascertained and determined without regard to this chapter. If a party, other than the employer, is a workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, or any officer, director, agent, or employee of the carrier, person, firm, association, trust, fund, or corporation, or is a labor union, or any official or representative thereof, or is a governmental agency providing occupational safety and health services, or an employee of the agency, or is an officer, director, agent, or employee of the same employer, or his or her personal representative, the injured employee, or his or her dependents in the case of death, may bring an action against any workers' compensation insurance carrier of the employer or any person, firm, association, trust, fund, or corporation responsible for servicing and payment of workers' compensation claims for the employer, labor union, or the governmental agency, or person, or his or her personal representative, only for willful conduct which results in or proximately causes the injury or death. If the injured employee, or in case of death, his or her dependents, recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death. If the employee who recovers damages is receiving or entitled to receive compensation for permanent total disability, then the employer shall be entitled to reimbursement for the amount of compensation theretofore paid, and the employer's obligation to pay further compensation for permanent total disability shall be suspended for the number of weeks which equals the quotient of the total damage[s] recovery, less the amount of any reimbursement for compensation already paid, divided by the amount of the weekly benefit for permanent total disability which the employee was receiving or to which the employee was entitled. For purposes of this amendatory act, the employer shall be entitled to subrogation for medical and vocational benefits expended by the employer on behalf of the employee; however, if a judgment in an action brought pursuant to this section is uncollectible in part, the employer's entitlement to subrogation for such medical and vocational benefits shall be in proportion to the ratio the amount of the judgment collected bears to the total amount of the judgment."
[2] See also Hatcher v. Diggs, 76 Ala. 189, 193 (1884):

"It will not be intended, that the legislature used different words in the same sentence, in the same sense, and with no other or different effect. The presumption is, that the law-maker intended a difference. And especially is this true, where, in an amendatory act, the words of the original act are used, and in the same order, to express the same ideas, and immediately following, in the same sentence, another word is inserted, relating to the same subject-matter. Such word, thus inserted, must be taken to express a different idea, and to have a different operation."
[3] Given the definitions of the words "reimbursement" and "subrogation," we do not believe that the words are synonyms. See generally Ex parte HealthSouth Corp., [Ms. 1060296, May 4, 2007] (discussing the interpretation of synonyms in statutes). Note from the reporter of decisions: On August 24, 2007, the Supreme Court withdrew the May 4, 2007, opinion in HealthSouth and substituted another one. The substituted opinion contains the same discussion. Ex parte HealthSouth Corp., [Ms. 1060296, August 24, 2007] ___ So.2d ___, ___ (Ala. 2007).
[4] Richardson v. Stanford Props., LLC, 897 So.2d 1052, 1058 (Ala.2004) ("`"There is a presumption that every word, sentence, or provision [of a statute] was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."'" (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997), quoting in turn other sources)).