LYONS, Justice.
 

 White Smile USA, Inc. (“White Smile”), and D’Markos, L.L.C. (“D’Markos”), appeal from a judgment of the Montgomery Circuit Court that held that their sale in Alabama of teeth-whitening products and services were the practice of dentistry as defined by § 34-9-6, Ala.Code 1975. We affirm.
 

 Factual Background and Procedural History
 

 White Smile sells a teeth-whitening product in 22 states, including Alabama, under the trademark “LightWhite.” White Smile markets LightWhite as a “cosmetic teeth whitening system.” It does not sell LightWhite for use in dental offices or for individual, at-home use. Instead, White Smile requires that salons and stores that sell LightWhite apply the product in the salon or store. D’Markos operates a hair and nail salon in Montgomery known as Randall’s. In 2007, White Smile and D’Markos entered into an agreement pursuant to which D’Markos agreed to sell LightWhite at Randall’s.
 

 Anticipating that the Alabama Board of Dental Examiners (“the Board”) would bring an action against them alleging that they were practicing dentistry without a license, White Smile and D’Markos, on January 28, 2008, sued the Board in the Montgomery Circuit Court. White Smile and D’Markos sought a judgment declaring that the sale of LightWhite with in-store application, as performed at Randall’s, was not the practice of dentistry within the meaning of § 34-9-6, Ala.Code 1975, and thus not subject to the licensing requirements of § 34-9-3, Ala.Code 1975, and to regulation by the Board under § 34-9-43, Ala.Code 1975. Section 34-9-6 provides, in part: “Any person shall be deemed to be practicing dentistry who performs ... any dental operation or dental service of any kind.... ”
 

 The parties waived a formal trial and instead submitted the matter to the trial court for disposition on briefs, deposition transcripts, and oral argument. The material facts as submitted to the trial court are not disputed. When White Smile contracted with D’Markos, White Smile trained and “certified” two D’Markos employees in the LightWhite application process. The LightWhite training manual summarizes the application process.
 

 Once a customer purchases LightWhite for application at Randall’s, a D’Markos employee trained in the LightWhite application process follows these 22 specific instructions provided by White Smile in the LightWhite training manual:
 

 “1. Have client sit down in a whitening chair. Remove ALL needed products for process from cabinets and/or drawers and lay out on a new towel.
 

 “2. Ask the client if they are taking any medication that reacts adversely with sunlight. If they answer yes, then instruct them [to] seek their doctor’s advice before going through with the teeth whitening application.
 

 “3. Ask the client when they last had their teeth cleaned by a dentist.
 

 
 *11
 
 “4. Explain to client the possible side effects from this process.
 

 “1. Blanching of Gums — whitening of the soft gum tissue.
 

 “a. Cause — Bacteria under the gum line (regular teeth cleaning minimizes this side effect). The reason this occurs is the Hydrogen Peroxide agent in this product searches out bacteria within the mouth and begins to kill the bacteria. This is safe for the gums, but can cause a burning sensation or swelling resulting from blanching. If client experiences discomfort beyond minor burning, discontinue application.
 

 “b. Resolution — The blanching of the gums is a temporary side effect and gums will return to their normal pink color within 5-15 minutes after process. Have client use a Vitamin E swab on gum for immediate relief.
 

 “2. Teeth Sensitivity — discomfort due to tooth pain.
 

 “a. Cause — Some clients have sensitive teeth (genetics), over-exposure to peroxide (peroxide left on teeth too long), and/or peroxide percentage too high in whitening gel. If a client has a cavity, cracked teeth, or any other dental issues that result in root exposure, discontinue the use of this product. The exposure to peroxide on an exposed root, though temporary, can cause severe discomfort.
 

 “b. Resolution — Due to our unique whitening formula and the limited exposure period (12-min-utes), less than 1% of our clients experience any teeth sensitivity what so ever [sic]. One of the major advantages of the LightWhite ® product line is the lack of teeth sensitivity.
 

 “5. Place bib around client’s neck and attach with provided bib chain clip.
 

 “6. Use provided Vita Pan Tooth Scale to determine clients’ pre-application teeth shade. Have client look in mirror for agreement of current teeth shade. Once the shade is agreed upon, raise up the appropriate teeth color on shade guide and place next to client’s chair for comparison use after whitening process is complete.
 

 “7. Glove up. Ask the client if they have any allergies to latex. Put on latex or non-latex gloves.
 

 “8. Remove ‘Brush Up’ from packaging and have client brush their teeth.
 

 “9. Remove Custom Mouthpiece (CM) from packaging. Use your finger to manipulate the silicon so that it slopes toward the upper front edge of the CM on both top and bottom.
 

 “10. Hand CM to client to self-administer, ensuring that mouthpiece is inserted correctly before client bites down into soft silicon. Instruct the client to bite down in the middle on the silicon bead.
 

 “11. Have client gently rock jaw from FRONT to BACK to dislodge CM from teeth. Have client carefully remove CM from mouth with tab provided. Check for proper registration and show client the results. Now you are ready to apply whitening gel provided into the CM.
 

 “12. Fill CM with whitening gel. Ensure that each teeth cavity is approximately ½ full with gel. DO NOT OVERFILL TRAY. Start filling from the front teeth to the back using less gel per cavity as you move towards the back teeth. Repeat process for the top and bottom teeth registrations. Once gel is applied, spray one (1) squirt of provided
 
 *12
 
 Photo Initiator to the top and one to the bottom tray.
 

 “13. Before inserting CM, require client to DRY their teeth with provided paper towel. Why? Best results occur when whitening gel is not diluted with saliva. Saliva present on teeth can cause less than optimal results — IMPORTANT.
 

 “14. Offer client q-tip with Vaseline to apply to lips as protective barrier from the light drying out lips. Chap stick or lipstick will work just as well.
 

 “15. Hand CM with gel to client to self-administer, ensuring that mouthpiece is inserted correctly (make sure the mouthpiece is lined up properly with existing registration) before client bites down into tray with gel. REMOVE GLOVES!
 

 “16. Have client get comfortable in chair and provide them with the protective eye glasses [sic] supplied to wear during whitening process.
 

 “17. Adjust whitening light into proper position (approximately 1-2 inches away from client’s mouth).
 

 “18. Check timer on whitening light to ensure that it is set correctly on 12 or 15 minutes. Press the start button.
 

 “19. Check with client periodically for signs of discomfort. If issue arises, discontinue process and determine reason for discomfort. Very few clients ever have any discomfort, but it will happen from time to time. Mostly due to an exposed root (cavity) that client is unaware of.
 

 “20. Watch timers carefully as you need to prepare one empty cup and two 1.5 ounce water cups for client to rinse mouth out after the 12-15 minute process is complete.
 

 “21. Once 15-minute process is over, the whitening light will automatically shut off. Quickly remove light apparatus, have client sit up and instruct them to remove CM from mouth and hand to you. Use a paper towel to receive used mouthpiece.
 

 “22. Provide client with empty cup to spit in and then provide them with 1.5 ounce water cup to wash out mouth. Have client rinse and spit contents of mouth back into provided 3-ounce cup. Repeat this process again with 2nd 1.5 ounce cup of water.”
 

 (Capitalization in original.) The D’Markos employee then uses a chart to help the customer determine the current shade of his or her teeth and whether to have a second application.
 

 White Smile and D’Markos submitted the deposition transcripts of their respective owners, who described the application process in detail. White Smile and D’Mar-kos also submitted the deposition transcript of an expert witness who likened LightWhite to over-the-counter teeth-whitening products sold for individual, at-home use. He opined that, because Li-ghtWhite was self-applied by the customer and because no D’Markos employee ever touched the customer’s mouth, the sale of LightWhite was not the practice of dentistry. Based on this testimony, White Smile and D’Markos argued that the sale of Li-ghtWhite to customers at Randall’s was not the practice of dentistry within the meaning of § 34-9-6.
 

 The Board submitted the deposition transcripts of its chairman and an expert witness. Both witnesses testified extensively regarding the contraindications and potential adverse side effects of the Li-ghtWhite teeth-whitening process. Ultimately, both witnesses opined that Li-ghtWhite, as sold and applied at Randall’s, was a “dental service” within the meaning of § 34-9-6. Based on this testimony, the Board argued that the sale of LightWhite
 
 *13
 
 at Randall’s was the practice of dentistry as defined by § 34-9-6 and was subject to the licensing requirements of § 34-9-8 and to regulation by the Board.
 

 On February 2, 2009, the trial court entered an order finding that “the teeth whitening service provided and activities performed by [D’Markos] ... fall within the scope of the practice of dentistry as the same is defined in [§ 34-9-6].” The trial court noted policy concerns regarding the safety of teeth-whitening procedures generally and LightWhite specifically. Based on its conclusions, the trial court found that the sale of LightWhite by Randall’s and the services associated with its application constituted the practice of dentistry and denied White Smile’s and D’Markos’s request for a declaratory judgment in their favor. White Smile and D’Markos appealed.
 

 Standard of Review
 

 This Court has explained the applicable standard of review as follows:
 

 “The trial court’s judgment was based on undisputed facts and documentary evidence. Thus, rather than apply the standard of review generally applicable to a declaratory judgment, we will apply a de novo standard of review.
 
 See Alfa Mut. Ins. Co. v. Small,
 
 829 So.2d 743, 745 (Ala.2002) (holding that ‘[o]ur review of a declaratory judgment is generally governed by the ore tenus standard of review. However, in cases such as this, where there are no disputed facts and where the judgment is based entirely upon documentary evidence, no such presumption of correctness applies; our review is de novo.’).”
 

 Raley v. Main,
 
 987 So.2d 569, 575 (Ala.2007).
 

 Analysis
 

 Article 34, Chapter 9, Ala.Code 1975, regulates the practice of dentistry in Alabama. Section 34-9-3 requires the licensing of dentists, and § 34 — 9—43 grants the Board the authority to regulate the professional activities of dentists in Alabama. Section 34-9-6 defines the practice of dentistry, stating:
 

 “Any person shall be deemed to be practicing dentistry who performs, or attempts or professes to perform,
 
 any
 
 dental operation or
 
 dental service of any kind,
 
 gratuitously or for a salary, fee, money or other remuneration paid, or to be paid, directly or indirectly, to himself, or to any person in his behalf, or to any agency which is a proprietor of a place where dental operations or dental services are performed.... ”
 

 (Emphasis added.) Section 34-9-6 then lists 10 other activities that constitute the practice of dentistry under Chapter 9. The ultimate issue in this action is whether the sale of LightWhite with in-store application, as performed at Randall’s, is the practice of dentistry within the meaning of § 34-9-6.
 

 White Smile and D’Markos focus their argument on appeal, as they did before the trial court, on the proposition that Li-ghtWhite is merely an over-the-counter product that is self-administered by the customer in Randall’s salon and, therefore, the sale of LightWhite is not the practice of dentistry. They focus in detail on each step of the application process, and they argue that no single step constitutes the practice of dentistry. Based on the details of the application process and on the potential risks associated with LightWhite, the Board argues that the sale of Li-ghtWhite, as undertaken at Randall’s, is the practice of dentistry. The Board argues that as the administrative agency charged with enforcing the statutes regulating the professional activities of dentists its interpretation of § 34-9-6 is entitled to
 
 *14
 
 great deference. See, e.g.,
 
 QCC, Inc. v. Hall,
 
 757 So.2d 1115, 1119 (Ala.2000). White Smile and D’Markos argue that the Board’s interpretation of § 34-9-6 is entitled to no deference. Both parties also argue extensively regarding numerous hypothetical situations.
 

 Section 34-9-6 defines the practice of dentistry to include the performance of a “dental service.” No provision of Chapter 9 defines the term “dental service,” nor does any regulation promulgated by the Board. Furthermore, our research has not produced any decision by an Alabama court defining the term. This Court has stated:
 

 “ ‘The fundamental principle of statutory construction is that words in a statute must be given their plain meaning.’
 
 Mobile Infirmary Med. Ctr. v. Hodgen,
 
 884 So.2d 801, 814 (Ala.2003). ‘When a court construes a statute, “[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.” ’
 
 Ex parte Berryhill,
 
 801 So.2d 7, 10 (Ala.2001) (quoting
 
 IMED Corp. v. Systems Eng’g Assocs. Corp.,
 
 602 So.2d 344, 346 (Ala.1992)).”
 

 Trott v. Brinks, Inc.,
 
 972 So.2d 81, 85 (Ala.2007). More specifically, this Court has explained: “[W]hen a term is not defined in a statute, the commonly accepted definition of the term should be applied.”
 
 Bean Dredging, L.L.C. v. Alabama Dep’t of Revenue,
 
 855 So.2d 513, 517 (Ala.2003) (citing
 
 Republic Steel Corp. v. Horn,
 
 268 Ala. 279, 281, 105 So.2d 446, 447 (1958)). Accordingly, we must look to the commonly accepted definition of the term “dental service” to determine its meaning under § 34-9-6. We must consider whether the sale and application of LightWhite at Randall’s falls within this definition.
 

 The commonly accepted definition of the word “dental” is “of or relating to the teeth or dentistry.”
 
 Merriam-Webster’s Collegiate Dictionary
 
 333 (11th ed.2003). The commonly accepted definition of the word “service” is “the act of serving: as
 
 a:
 
 a helpful act [or]
 
 b:
 
 useful labor that does not produce a tangible commodity.”
 
 Merriam-Webster’s Collegiate Dictionary
 
 1137 (11th ed.2003). The commonly accepted definition of “dental service” is, therefore, a helpful act or useful labor of or relating to the teeth.
 

 Initially, we note that we will not consider each step of the application process in isolation as White Smile and D’Markos suggest we should do. The issue presented to us is whether the sale of LightWhite with in-store application,
 
 as performed in Randall’s,
 
 is the practice of dentistry within the meaning of § 34-9-6. Accordingly, we will consider the teeth-whitening process used in Randall’s as a whole.
 

 Considering the undisputed facts, it is apparent that customers who purchase Li-ghtWhite at Randall’s receive more than just the product itself. Although the Li-ghtWhite teeth-whitening process is largely self-administered by the customer, D’Markos offers the customer assistance in that its employees are present with the customer throughout the process. D’Mar-kos employees instruct the customer in the proper application of the product; they answer questions, presumably with some knowledge; and they handle many of the materials used in the process while wearing protective gloves. Accordingly, D’Markos sells not only the product, but also the helpful acts and useful labor of its employees that relate to the customer’s teeth-whitening experience. Therefore, the sale of LightWhite with in-store application as performed at Randall’s is a dental service within the meaning of § 34-9-6. Consequently, it is the practice of dentistry within the meaning of that section.
 

 
 *15
 
 We acknowledge the conflicting policy arguments regarding the interpretation of § 34-9-6; the parties have argued the merits of these considerations thoroughly. However, the evaluation of the merits of the competing policy considerations is a matter for the legislature. As it currently exists, § 34-9-6 includes the performance of dental services in its definition of the practice of dentistry. Because the record shows that, under the commonly accepted definition of that term, the sale and application of LightWhite at Randall’s was the performance of a dental service, the trial court correctly determined that it constituted the practice of dentistry within the meaning of § 34-9-6. We therefore affirm the trial court’s judgment.
 

 AFFIRMED.
 

 COBB, C.J, and STUART, BOLIN, and MURDOCK, JJ., concur.