979 So.2d 766 (2007)
CLEBURNE COUNTY COMMISSION et al.
v.
Jack E. NORTON.
1060135.
Supreme Court of Alabama.
August 17, 2007.
*768 Bart Harmon and Winthrop E. Johnson of Webb & Eley, P.C., Montgomery, and M. Douglas Ghee of Ghee & Draper, Anniston, for appellants.
John S. Casey of Casey, Casey & Casey, Heflin, for appellee.
Donald R. Rhea of Rhea, Boyd, Rhea & Coggin, Gadsden, for amicus curiae Alabama Sheriffs' Association, in support of the appellee.
PER CURIAM.
The Cleburne County Commission and commissioners Ryan Robertson, Bobby Brooks, Tracy Lambert, Dwight Williamson, and Joel Robinson (hereinafter collectively referred to as "the Commission") appeal from a summary judgment entered by the Cleburne Circuit Court in favor of Jack E. Norton, a supernumerary sheriff in Cleburne County. In entering the summary judgment, the trial court held §§ 11-2A-1 through -8, Ala.Code 1975, unconstitutional and ordered the Commission to pay Norton "all salary adjustments, cost of living expenses or other salary increases as the remuneration of the Sheriff of Cleburne County, Alabama, has increased since the year 2000 as provided by § 36-22-62(a) and (b), Ala.Code 1975." We reverse and remand.

I. Background
The facts are undisputed. On April 2, 1992, Norton, who had previously served as the sheriff of Cleburne County, notified then Governor Guy Hunt and Cleburne County Probate Judge Mac Smith[1] of his election to participate in the supernumerary sheriffs' program as provided in § 36-22-60 et seq., Ala.Code 1975. On April 8, 1992, Governor Hunt notified Norton of his appointment as supernumerary sheriff of Cleburne County effective April 10, 1992, and on April 20, 1992, Probate Judge Smith administered the oath of office to Norton.
On January 10, 1987, while he was serving as sheriff, Norton had paid $7,500 to Cleburne County to purchase prior service credit pursuant to § 36-22-63, Ala.Code 1975. Thereafter, until his retirement as sheriff of Cleburne County, an amount equal to six percent of his salary was deducted from Norton's salary in accordance with § 36-22-61, Ala.Code 1975.
After Norton was appointed as supernumerary sheriff, he received the prescribed salary of a supernumerary sheriff. Section 36-22-62(a), Ala.Code 1975, provides, in pertinent part, that a supernumerary sheriff "shall be entitled to receive an amount equal to 50 percent of the monthly salary paid such person at the time of the completion of his service in office, and *769 shall be entitled to receive an additional amount equal to two percent of such person's said monthly salary for each additional year of service up to a maximum of 65 percent of such monthly salary. . . ." In addition, § 36-22-62(b), Ala.Code 1975, provides:
"Those persons eligible under either subdivisions (1) or (2) of Section 36-22-60, that may elect to become a supernumerary sheriff shall be entitled to receive a cost-of-living increase as the remuneration of the office of sheriff increases from which the supernumerary sheriff elected to vacate. Said cost-of-living increase shall be equal to the percentage allowed said supernumerary sheriff of the present sheriff's remuneration."
During its 2000 Regular Session, the Alabama Legislature enacted Act No. 2000-108, which is codified at §§ 11-2A-1 through -8, Ala.Code 1975. Section 11-2A-2 provides, in pertinent part:
"Effective October 1, 2000, the annual compensation which a county shall pay to a county commissioner, a judge of probate, a sheriff, a tax assessor, a tax collector, a revenue commissioner, a license commissioner, and an elected assistant tax assessor or collector shall be as set out below:
"(1) SHERIFF. The annual minimum compensation for each sheriff shall be fifty thousand dollars ($50,000) which shall be in lieu of any salary and expense allowance currently provided to a sheriff receiving total compensation less than the minimum. Beginning with the next term of office for each sheriff, except as provided in Section 11-2A-4, the salary herein provided shall be the minimum compensation payable to the sheriff in lieu of any salary, expense allowance, or other compensation provided by law.
". . . .
"(4) Any laws to the contrary notwithstanding, no person holding supernumerary office shall be entitled to any increases in compensation or expenses as a result of the implementation of any salary adjustments provided for in this chapter."
The Cleburne County Commission has denied Norton salary adjustments since June 1, 2000, the effective date of Act No. 2000-108, based on § 11-2A-2(4).
In 2005, Norton filed an action in the Cleburne Circuit Court, seeking a judgment declaring § 11-2A-2(4) unconstitutional and ordering the County to pay him all salary increases he argues are due him under § 36-22-62(b) since 2000. Norton submitted to the Commission a request for admission of facts, and the Commission failed to respond within 30 days; thus the facts were deemed admitted pursuant to Rule 36, Ala. R. Civ. P. Based on the admitted facts, Norton filed a motion for a summary judgment, which the trial court granted on September 29, 2006. The Commission appeals.

II. Standard of Review
"We review a summary judgment de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima *770 facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala.Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871 (Ala.1989)."
Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala.2004).

III. Analysis
In its summary-judgment order, the trial court found as follows:
"Act 2000-108, codified as Section 11-2A-1 through -8, Code of Alabama, 1975, as amended, contravenes Section 22 of the Constitution of Alabama of 1901, and is unconstitutional as it applies to [Norton] in that [Norton] had a solemn binding contract with the [Commission] when he was appointed supernumerary sheriff on April 10, 1992, under the provisions of Section 36-22-60, Code of Alabama, 1975, and is entitled to the salary provided in Section 36-22-62(a) and is further entitled to the salary adjustments as provided in Section 36-22-62(b) of the Code."
The Commission asserts that the trial court erred in declaring §§ 11-2A-1 through -8 unconstitutional because, it argues, no "solemn binding contract" existed between Norton and the Commission. Norton, however, argues that the supernumerary-sheriff program is a thinly disguised retirement plan to which he contributed as well as purchased prior service credit and in which he has a vested interest. Therefore, he contends that §§ 11-2A-1 through -8 violate Art. I, § 22, Ala. Const. of 1901, which states that no law may be enacted impairing the obligations of a contract.
In Johnson v. Board of Control of Employees' Retirement System of Alabama, 740 So.2d 999 (Ala.1999), Justice Shores detailed the history of supernumerary officials in Alabama:
"By constitutional provision, Alabama has historically denied the legislature the authority to provide for retirement benefits for state officers, including, by implication, judges. This restriction on the legislative power is currently found in Article IV, § 98, of the Alabama Constitution of 1901:
"`The legislature shall not retire any officer on pay, or part pay, or make any grant to such retiring officer.'
"This constitutional prohibition against providing pensions for state officials led to legislation over the years creating supernumerary positions for certain state officials who met the statutory requirements for such positions. These statutes creating supernumerary positions were enacted to compensate certain public officials who had served the state for a number of years (as prescribed by statute) and who had reached a certain age (also prescribed by statute), provided that the official entering upon the supernumerary office performed certain duties prescribed by the legislature. See James v. Thompson, 392 So.2d 1178 (Ala.1981). Because Article IV, § 98, of the constitution prohibited laws granting retirement benefits to such state officials, the validity of these statutes depended upon the fact that these supernumerary officials performed certain duties and responsibilities [related to] the supernumerary office *771 created. Although these statutes may have been drafted deliberately to evade the constitutional prohibition against legislation granting retirement pay to state officials, it is clear that the compensation provided was in exchange for services performed by the supernumerary officials, as opposed to compensation for past service to the state.
"For example, by Act No. 357, Ala. Acts 1979 (§ 36-22-60 et seq., Ala.Code 1975), the legislature created the office of supernumerary sheriff. This act permitted a sheriff who had served for at least 16 years in law enforcement, 12 as sheriff, and who had reached 55 years of age to elect to become a supernumerary sheriff, subject to call to active duty by the Governor."
740 So.2d at 1003.
As the Court of Civil Appeals has noted: "The law in Alabama is clear that a supernumerary plan is not a retirement plan." Board of Control of Employees' Ret. Sys. of Alabama v. Hadden, 854 So.2d 1165, 1168 n. 4 (Ala.Civ.App.2002). This Court has further explained:
"The legislature, in creating a supernumerary program for elected sheriffs in Alabama, necessarily created the office of supernumerary sheriff. Although the duties of such office are limited in scope and the performance of such duties [is] contingent and narrowly defined, the statutorily prescribed position and function of a supernumerary sheriff is that of a public office  an `office of trust [and] profit.' Otherwise, the compensation provisions of [Act No. 79-357] clearly would run afoul of § 98 of our State Constitution, which proscribes any legislative grant of retirement pay to public officers.

"Moreover, our disposition of the instant appeal is aided by the literal meaning of the word `supernumerary.' The word is derived from two Latin words  super, above or beyond; and numerus, a number. Thus, these two words, when used in combination and translated, mean exceeding a prescribed number. The legislative employment of this term, as a means of providing compensation to public officials conditioned upon age and length of service, created an office of public trust with duties and responsibilities concomitant with its purpose and design. While its members are above and beyond the numbers prescribed for active sheriffs, and its duties are limited and contingent by its nature, its character is not reduced to something less than that of a public office. Indeed, the Act provides that each supernumerary sheriff shall take the oath of office prescribed for sheriffs."
James v. Thompson, 392 So.2d 1178, 1180 (Ala.1981) (some emphasis added). Because a supernumerary sheriff holds an "office of trust [and] profit," Norton's remuneration for serving as supernumerary sheriff cannot be considered retirement pay. Thus, Norton's argument that the supernumerary-sheriff program is in essence a retirement plan in which he has a vested contractual interest fails.
We next address the question of whether the legislature may enact legislation limiting the compensation of a State official without impairing the obligation of contract as guaranteed by the Ala. Const. of 1901, i.e., whether the enactment of §§ 11-2A-1 through -8 contravenes Art. I, § 22, Ala. Const. of 1901, which provides "[t]hat no ex post facto law, nor any law, impairing the obligations of contracts, or making any irrevocable or exclusive grants of special privileges or immunities, shall be passed by the legislature; and every grant or franchise, privilege, or immunity shall *772 forever remain subject to revocation, alteration, or amendment."
Our consideration of this issue must begin with the observation that this Court gives great deference to the acts of the legislature.
"`[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.'"
Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)).
Previously, this Court has noted that "the salary of a public officer is not a contract, and that the office, if statutory, may be abolished without infringing upon the rights of the officer." Downs v. City of Birmingham, 240 Ala. 177, 183, 198 So. 231, 235 (1940). Further, this Court held in City of Birmingham v. Penuel, 242 Ala. 167, 174, 5 So.2d 723, 728 (1942):
"The rule enunciated by this court in Dale v. Governor, [3 Stew. 387 (Ala. 1831)]; Benford v. Gibson, [15 Ala. 521 (1849)]; [and] Helms v. Alabama Pension Commission, [231 Ala. 183, 163 So. 807 (1935)], was recently affirmed in Downs v. City of Birmingham, 240 Ala. 177, 186, 198 So. 231 [(1940)], and the holdings are to the effect that the legislature may, without impairing the obligation of contract, reduce the compensation of an official who is capable of and willing to devote all of his energy and time to the performance of his statutory duties."
Because the salary of a public officer is not based upon a contract and the legislature may therefore limit or reduce such salary without violating § 22, it follows that §§ 11-2A-1 through -8, Ala.Code 1975, are not unconstitutional as an impairment of contractual rights.
We further note that the statutes creating the office of supernumerary sheriff and providing for the salary of the office, § 36-22-60 et seq., were enacted by the legislature in 1979 and were amended in 1982. The statutes upon which the Commission relies  §§ 11-2A-1 through -8  were enacted by the legislature in 2000. "`The well-settled principle is that the last expression of the legislative will is the law in case of conflicting provisions of the statute on the same subject, and the last enacted in point of time prevails.'" State v. Gaines, 932 So.2d 118, 122 (Ala.Crim.App.2004) (quoting Middleton v. General Water Works & Elec. Corp., 25 Ala.App. 455, 456, 149 So. 351, 352 (1933)). Thus, because § 11-2A-2(4) is the last expression of the legislative will, its provisions take precedence over the earlier, and less specific, provisions of § 36-22-62(b).
Norton argues that by statute he has a vested interest in his status as a supernumerary sheriff. He cites § 36-22-61, Ala.Code 1975, which states, in pertinent part:
"If any sheriff, subject to the provisions of this article, shall end his tenure of office prior to having reached [the] age of 55 years, but having had 16 years of service as a law enforcement officer, 12 of which have been as sheriff, his supernumerary allowance as set out in Section 36-22-62, shall be vested and held in the general fund of the county until he attains the age of 55, at which time, or any *773 time thereafter, he may elect to become a supernumerary sheriff as set out in Section 36-22-60. . . . "
When interpreting a statute, this Court is bound to look to the plain meaning of the words used by the legislature.
"`In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
"`"Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect."
"`Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)). . . . '"
Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138, 149 (Ala.2006). No definition for the term "allowance" used in § 36-22-61 is provided in Chapter 22 of Title 36. However, Black's Law Dictionary defines "allowance" as "[a] share or portion, esp. of money that is assigned or granted." Black's Law Dictionary 84 (8th ed.2004). Thus, given the plain meaning of the word "allowance," it is apparent that the use of that word in § 36-22-61 refers to the supernumerary sheriff's being vested as to the pay he or she shall receive upon entering the office of supernumerary sheriff, i.e., 50 percent of his or her most recent monthly salary before leaving the office of sheriff as set forth in § 36-22-62(a), and not to the cost-of-living increase provided for in § 36-22-62(b). Norton thus received his "vested" allowance once he received his salary after taking the oath of office of supernumerary sheriff.
Finally, we consider whether the adoption of §§ 11-2A-1 through -8 supersedes § 36-22-62(b), which provides for a cost-of-living allowance and which states:
"Those persons eligible under either subdivisions (1) or (2) of Section 36-22-60, that may elect to become a supernumerary sheriff shall be entitled to receive a cost-of-living increase as the remuneration of the office of sheriff increases from which the supernumerary sheriff elected to vacate. Said cost-of-living increase shall be equal to the percentage allowed said supernumerary sheriff of the present sheriff's remuneration."
Section § 11-2A-4(a) provides:
"Beginning with the fiscal year commencing on October 1, 2001, the local officials covered by this chapter shall be entitled to the same uniform increases in compensation, including cost-of-living increases, longevity increases, merit raises, and bonuses that are granted to county employees by the county commission at the time of the approval of the county budget. The increases shall be in the same amount or percentage, as the case may be, as that amount or percentage increase provided to the county's employees. . . . "
This section must be read in conjunction with § 11-2A-2(4), which provides:
"Any laws to the contrary notwithstanding, no person holding supernumerary office shall be entitled to any increases in compensation or expenses as a result of the implementation of any salary adjustments provided for in this chapter."
(Emphasis added.) Because "we presume that the Legislature knows the meaning of the words it uses in enacting legislation," Ex parte Jackson, 614 So.2d 405, 407 (Ala. *774 1993), we must consider § 11-2A-2(4) as applicable to the whole chapter and not only to § 11-2A-2.
The legislature did not define the term "salary adjustments" as used in § 11-2A-2(4), and this Court must therefore address the question whether cost-of-living increases, merit raises, and bonuses constitute "salary adjustments." "When a court construes a statute, `[w]ords used in [the] statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.'" Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001) (quoting IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)). Section 11-2A-4(a) specifically mentions a "cost-of-living adjustment" when it states: "If the implementation of any cost-of-living adjustment increases the salary of an incumbent office holder, the increase shall be paid as provided in subdivision (5) of Section 11-2A-2." (Emphasis added.) Likewise, the legislature in 1981 passed a local act affecting the town of Fort Payne and providing additional compensation of $150 per month for police officers. The act provided, in pertinent part: "Such compensation shall in no way affect or restrict the regular cost of living, merit or longevity salary adjustments to which such persons may be entitled." Act No. 81-915, Ala. Acts 1981 (emphasis added). Although this Court held Act No. 81-915 unconstitutional on other unrelated grounds, the wording of the act indicates that the legislature has historically considered a cost-of-living increase to be a "salary adjustment." See Johnson v. City of Fort Payne, 485 So.2d 1152 (Ala.1986). We therefore conclude that the legislature intended to include cost-of-living increases in it reference to "salary adjustments." It follows that the plain language of § 11-2A-2(4) prohibits a supernumerary sheriff from receiving cost-of-living adjustments contemporaneously with other county employees. Similarly, to the extent that §§ 11-2A-2(4) and 11-2A-4 conflict with § 36-22-62(b), for purposes of the circumstances of this case, §§ 11-2A-2(4) and 11-2A-4, as the more recent expressions of the legislature, control. See Gaines, supra.

IV. Conclusion
The office of supernumerary sheriff is an "office of trust [and] profit." As such, the legislature may limit or reduce the salary of supernumerary sheriffs without violating § 22, Ala. Const. of 1901. Thus, the Cleburne Circuit Court incorrectly held unconstitutional §§ 11-2A-1 through -8, Ala. Code 1975. We therefore reverse the summary judgment in favor of Norton, and we remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and SEE, LYONS, WOODALL, and BOLIN, JJ., concur.
STUART, PARKER, and MURDOCK, JJ., dissent.
PARKER, Justice (dissenting).
I respectfully dissent from the main opinion's reversal of the trial court's summary judgment in this case.
After the enactment of Act No. 2000-108, codified as Ala.Code 1975, § 11-2A-1 et seq., the Cleburne County Commission denied cost-of-living increases to Cleburne County Supernumerary Sheriff Jack E. Norton. In 2005 Norton filed a declaratory-judgment action seeking payment of those cost-of-living increases. The trial court granted Norton's motion for a summary judgment, from which the Cleburne County Commission and the commissioners appealed.
*775 Former sheriffs who have statutorily prescribed years-of-service credit are eligible to become supernumerary sheriffs. § 36-22-60, Ala.Code 1975. The pay for supernumerary sheriffs is based on their monthly salary at the time they completed their service as sheriffs. Section 36-22-60, Ala.Code 1975, provides:
"(a) Those persons eligible under either subdivisions (1) or (2) of Section 36-22-60, who have 16 years of creditable service as a law enforcement officer, 12 of which were served as sheriff, shall be entitled to receive an amount equal to 50 percent of the monthly salary paid such person at the time of the completion of his service in office, and shall be entitled to receive an additional amount equal to two percent of such person's said monthly salary for each additional year of service up to a maximum of 65 percent of such monthly salary, but in no event shall any person receive payments pursuant to both the supernumerary and disability supernumerary provisions simultaneously. All such payments shall be paid from the general fund of the county in which said eligible person is serving upon his election to become a supernumerary sheriff or to become a supernumerary sheriff due to a disability."
Section 36-22-62(b) provides that supernumerary sheriffs are entitled to cost-of-living increases:
"(b) Those persons eligible under either subdivisions (1) or (2) of Section 36-22-60, that may elect to become a supernumerary sheriff shall be entitled to receive a cost-of-living increase as the remuneration of the office of sheriff increases from which the supernumerary sheriff elected to vacate. Said cost-of-living increase shall be equal to the percentage allowed said supernumerary sheriff of the present sheriff's remuneration."
(Emphasis added.)
Act No. 2000-108, § 2(a), codified as Ala.Code 1975, § 11-2A-2(1), established a new base pay for sheriffs:
"(1) SHERIFF. The annual minimum compensation for each sheriff shall be fifty thousand dollars ($50,000) which shall be in lieu of any salary and expense allowance currently provided to a sheriff receiving total compensation less than the minimum. Beginning with the next term of office for each sheriff, except as provided in Section 11-2A-4, the salary herein provided shall be the minimum compensation payable to the sheriff in lieu of any salary, expense allowance, or other compensation provided by law."
Section 11-2A-2(4), which is crucial to this case, provides:
"(4) Any laws to the contrary notwithstanding, no person holding supernumerary office shall be entitled to any increases in compensation or expenses as a result of the implementation of any salary adjustments provided for in this chapter."
I read § 11-2A-2(4) as prohibiting supernumerary sheriffs from getting the new base pay established for sheriffs in § 11-2A-2(1). The compensation for supernumerary sheriffs is based upon their monthly salary at the time they completed their service in law enforcement, § 36-22-62(a). Section 11-2A-2(4) makes it clear that supernumerary sheriffs are not eligible for this new base pay or to have their pay as supernumerary sheriffs calculated based on the new base pay established in § 11-2A-2(1).
The prohibition in § 11-2A-2(4), however, does not affect cost-of-living increases for supernumerary sheriffs. Section 11-2A-2(4) *776 applies to "salary adjustments provided in this chapter." The cost-of-living increases for supernumerary sheriffs are not provided "in this chapter"  i.e., Chapter 2A of Title 11  but, instead, are provided in Chapter 22 of Title 36. Thus, the prohibition in § 11-2A-2(4) does not apply to cost-of-living increases for supernumerary sheriffs.
This interpretation of the statutes at issue here is reinforced by Act No. 2000-108, § 4, codified as section 11-2A-4, which allows for cost-of-living increases on the new base pay:
"(a) Beginning with the fiscal year commencing on October 1, 2001, the local officials covered by this chapter shall be entitled to the same uniform increases in compensation, including cost-of-living increases, longevity increases, merit raises, and bonuses that are granted to county employees by the county commission at the time of the approval of the county budget. The increases shall be in the same amount or percentage, as the case may be, as that amount or percentage increase provided to the county's employees; provided, however, no tax assessor, tax collector, revenue commissioner, license commissioner, elected assistant tax assessor, or elected assistant tax collector shall receive an expense allowance as provided in subdivision (3) of Section 11-2A-2, and an increase under this subsection in the same fiscal year.
"Except as otherwise provided herein, officials in Category 2 [counties with a population from 350,001 to 449,999] shall be eligible for the cost-of-living increases beginning on October 1, 2000. If the implementation of any cost-of-living adjustment increases the salary of an incumbent office holder, the increase shall be paid as provided in subdivision (5) of Section 11-2A-2. The base compensation for the purposes of implementation of this subsection shall be that compensation established on October 1, 2000, and shall remain those respective amounts until increased as provided under the provisions of this chapter.
"(b) Any provision of this chapter to the contrary notwithstanding, the Legislature, by local law, may increase the compensation for local officials covered under this chapter. However, if a local law increases the compensation of a local official, such local official shall not be entitled to any cost-of-living adjustments pursuant to the procedure in subsection (a), until such time as the total compensation he or she would have received under subsection (a) is equal to or exceeds the increase provided by the local law."
Subsection (b) provides an exception to the availability of cost-of-living increases when a local act increases the compensation of a local official. This exception is specifically referenced in the provision establishing the new base pay for sheriffs, § 11-2A-2(1). But this exception does not come into effect here because supernumerary sheriffs are not entitled to the new base pay nor is their compensation affected by a local act.
In contrast to the main opinion, I do not read § 11-2A-4 as providing for cost-of-living increases, in the terminology used in § 11-2A-2(4). Instead, I read § 11-2A-4 as allowing for cost-of-living increases provided for elsewhere and establishing rules to be applied to those cost-of-living increases.
Therefore, I believe that the trial court correctly granted Norton's motion for a summary judgment. Accordingly, I would affirm the judgment of the trial court.
*777 MURDOCK, Justice (dissenting).
Clearly, § 11-2A-2(4), Ala.Code 1975, prevents supernumerary sheriffs from receiving a pro rata share of the one-time "salary adjustment" provided for in § 11-2A-2(1). I am not persuaded, however, that the term "salary adjustment" was intended as a reference to the "cost-of-living increases" contemplated by § 11-2A-4, so as to prevent supernumerary sheriffs from receiving the ongoing cost-of-living increases contemplated by the statutory scheme governing supernumerary sheriffs contained in Art. 3, Ch. 22, Title 36, Ala. Code 1975.
NOTES
[1] In Cleburne County, the probate judge also serves as the ex-officio chairman of the Cleburne County Commission.