BRYAN, Judge.[1]
Jefferson County, the defendant below, appeals from a judgment in favor of Suzanne Birchfield, the plaintiff below. We reverse and remand.

Procedural History

On July 26, 2006, Birchfield sued Jefferson County. Her complaint, as ultimately amended, alleged that she had served as the appointed chief deputy tax assessor for the Bessemer Division of Jefferson County (“the chief deputy tax assessor-Bessemer”) from September 29, 1987, until October 15, 2006; that she was entitled to cost-of-living adjustments (“COLAs”) to her salary while she served as the chief deputy tax assessor-Bessemer; that John Scott, who was the elected assistant tax assessor for the Bessemer Division of Jefferson County (“the assistant tax assessor-Bessemer”) when she was appointed the chief deputy tax assessor-Bessemer, had represented to her in September 1987 that she was not entitled to COLAs because COLAs would cause her compensation to exceed 90% of his compensation, which would violate applicable law; that that representation constituted a misrepresentation of material fact; and that she was entitled to the COLAs that had not been paid to her from September 29, 1987, through September 30, 2002. Based on those allegations, Birchfield sought a judgment declaring that she was entitled to COLAs for the period September 29, 1987 through September 30, 2002, and damages based on theories of breach of contract and misrepresentation. Answering, Jefferson County denied that Birchfield was entitled to COLAs while she served as the chief deputy tax assessor-Bessemer and denied that Scott had misrepresented a material fact to Birchfield. Jefferson County also asserted various affirmative defenses including the applicable statutes of limitations.
Following a bench trial at which it received evidence ore tenus, the trial court entered the following judgment:
“This cause came on to be heard on Plaintiff, Suzanne Birchfield’s Complaint for payment of Cost of Living Adjustment Benefits due from Jefferson County. The Court took testimony on June 30th and July 6th, 2009. After considering said testimony and the exhibits received into evidence, this Court finds that the following order is due to be entered:
“1. On July 14, 1987, the Alabama Legislature enacted Act 87-421 which provided for the appointment of a Chief Deputy Tax Assessor by the Elected Jefferson County Tax Assessor and by the Elected Jefferson County Assistant Tax Assessor, Bessemer Division. Said act provided that the Deputy Tax Assessor would be ‘compensated at a rate equal to Jefferson County Merit System Class Thirty ... ’ and that ‘Said Chief Deputies shall receive any and all benefits that are received by Merit System Employees, including longevity payments. ...’
“2. One of the benefits to which the Merit System Employees of Jefferson County were and are entitled is a yearly Cost of Living Adjustment. The *558 amount of the benefit is adjusted in the fall of each year by the Jefferson County Commission.
“3. Suzanne Birchfield was appointed as Chief Deputy Tax Assessor for the Bessemer Division of Jefferson County, Alabama on September 29, 1987 and held that position until October 15, 2006.
“4. Jefferson County by and through its employees and agents represented to Suzanne Birchfield that she was not entitled to the Cost of Living Adjustment Benefit from 1987 until July of 2004.
“5. Suzanne Birchfield learned for the first time that she was entitled to the Cost of Living Adjustment Benefit in August of 2004 when she received a copy of an opinion issued on July 27, 2004, by the Office of the Attorney General of the State of Alabama. This opinion, designated as Opinion 2004 — 189[,] provided in pertinent part:
“ ‘The acts state that the “Chief Deputy” shall receive any and all benefits that are received by Merit System Employees, including longevity payments....” (Citations omitted). It is the opinion of this Office that cost-of-living increases qualify as such a benefit. Therefore, if the Jefferson County Commission grants merit system employees in Jefferson County a cost-of-living increase, the chief deputies would be entitled to the same cost-of-living increase.’
“The opinion further provided:
“ ‘The chief deputies are entitled to a cost-of-living increase, however, because Acts 87-421, 88-936, and 88-946 state that the chief deputies are entitled to all of the benefits of county merit system employees. When the Jefferson County Commission grants a cost-of-living increase to merit system employees, the deputies should receive the same cost-of-living increase.’
“6. Suzanne Birchfield contacted the Jefferson County’s Attorney’s Office on August 2, immediately after she learned of the Attorney General’s opinion and requested payment of the Cost of Living Adjustment Benefits.
“7. On the 15th day of September, 2004, Ms. Birchfield received from Jefferson County the sum of $1,640.76, which Jefferson County claimed was payment of the Cost of Living Adjustment Benefit for the period October 1, 2003 through [September] 4, 2004.
“8. On the 28th day of February, 2005, Ms. Birchfield received from Jefferson County the sum of $1,352.40 which Jefferson County claimed was payment of the Cost of Living Adjustment Benefit for the period October 1, 2002 through September 30, 2003.
“9. Suzanne Birchfield submitted a claim to Jefferson County for the Cost of Living Adjustment Benefits which had been wrongfully denied to her for the time period September 29, 1987 through [September 30, 2002],
“10. Jefferson County refused to pay the claim.
“11. Suzanne Birchfield filed suit in this Court within two years of the time that she first learned that she, as the Chief Deputy Tax Assessor of [the Bessemer Division of] Jefferson County, was entitled to the Cost of Living Adjustment Benefit received by the Merit System Employees of Jefferson County.
“12. At trial, Suzanne Birchfield submitted an amended claim to this Court for the unpaid Cost of Living Adjustment Benefits in the amount of [$]141,-542.24.
“13. Section 6-5-101 of the Code of Alabama provides:
*559 “ ‘Misrepresentations of a material fact made wilfully to deceive, or recklessly without knowledge and acted on by the opposite party, or if made by mistake innocently and acted on by the opposite party constitute legal fraud.’
“14. Jefferson County, through its officials, agents and employees represented to Suzanne Birchfield that she was not entitled to a benefit which she was, by law, entitled to receive. These false representations were continuing in nature and were made to Suzanne Birchfield with the intent that she should rely on them. Suzanne Birch-field relied on the false representations made by Jefferson County and she was damaged.
“15. Defendant, Jefferson County failed to pay to Suzanne Birchfield, the Cost of Living Adjustment benefit which was due to her, as mandated by the Legislature of the State of Alabama. Jefferson County owes to Suzanne Birchfield the sum of $141,542.24.
“Judgment is hereby rendered against Jefferson County and in favor of Suzanne Birchfield in the amount of $141,542.24 together with costs.”
Jefferson County timely appealed to the supreme court; the supreme court then transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Facts

The Alabama Legislature enacted Act No. 87-421, Ala. Acts 1987, in July 1987. In pertinent part, Act No. 87-421 provided:
“Section 1. The Elected Jefferson County Tax Assessor and the Elected Jefferson County Assistant Tax Assessor, Bessemer Division, are empowered to each appoint one person to serve as Chief Deputy....
[[Image here]]
“Section 3. Said Chief Deputies shall be compensated at a rate equal to Jefferson County Merit System Class Thirty, however, in no event shall such compensation exceed ninety percent of the compensation received by the Appointing Authority....
“Section 4. Said Chief Deputies shall receive any and all benefits that are received by Merit System Employees, including longevity payments.... ”
(Emphasis added.)
Birchfield testified that Scott had written the proposed bill that was submitted to the legislature and enacted as Act No. 87-421 and that she had been working as a merit-system employee in Scott’s office when he wrote the proposed bill. She further testified that, before she applied for the position of chief deputy tax assessor-Bessemer, Scott had told her that “it was his opinion ” that, if she were appointed deputy chief tax assessor-Bessemer, she would not be entitled to COLAs because COLAs would cause her compensation to exceed 90% of his compensation. (Emphasis added.) .Birchfield further testified that she nonetheless applied for the position of chief deputy tax assessor-Bessemer and that Scott appointed her to that position on September 29,1987.
Birchfield testified that Scott subsequently began receiving an automobile allowance in the amount of approximately $5,200 per year and that she had asked Scott whether she could receive a COLA because he was receiving that automobile allowance. According to Birchfield, Scott told her “[t]hat [her] salary was capped at 90% [of his]” and that “[e]ven though he was getting more money, there was no way that [she] could get more money.”
In 1989, the Alabama Legislature enacted Act No. 89-1009, Ala. Acts 1989. In pertinent part, Act No. 89-1009 provided:
*560 “Section 1. Effective at the beginning of the next term of office, October 1, 1991, the Jefferson County tax assessor ... shall receive a salary of $55,800.00 per annum....
“Section 2. Effective at the beginning of the next term of office, October 1, 1991, the elected assistant tax assessor, Bessemer Division, ... shall receive a salary of 90 percent of the annual salary of the Jefferson County tax assessor....
“Section 3. Effective at the beginning of the next term of office, October 1, 1991, ... the chief deputy tax assessor, Bessemer Division, ... shall receive an annual salary equal to Jefferson County merit system class 30, step 5, but in no event shall such salary exceed 90 percent of the annual salary received by the appointing official.... It is further provided that the provisions of Alabama Act [No.] 87-421 ... shall be extended by the enactment of this bill.”
(Emphasis added.)
Birchfield testified that, in 1992, a question arose regarding whether she would be entitled to a longevity payment and that Jeanne Edwards, who was then the Jefferson County Payroll Manager, told Birch-field that she could not receive the longevity payment because it would result in her compensation exceeding 90% of the compensation of the assistant tax assessor-Bessemer. Birchfield further testified that she subsequently received a copy of a memorandum dated August 5, 1992, that Andy Strickland, who was then the Jefferson County Attorney, had sent to Edwards. In that memorandum, Strickland opined that, because Section 4 of Act No. 87-421 expressly provided that the chief deputy tax assessor-Bessemer was entitled to “all benefits ... including longevity payments” and Act No. 89-1009 had not repealed Section 4 of Act No. 87-421, the chief deputy tax assessor-Bessemer was entitled to longevity benefits “regardless of the statutory 90% cap on her salary” contained in Section 3 of Act No. 89-1009.
In 1996, the Alabama Legislature enacted Act No. 96-541, Ala. Acts 1996. That act provided:
“Section 1. Section 3 of Act No. 89-1009 ... is amended to read as follows:
“ ‘Section 3. Effective at the beginning of the next term of office, October 1, 1991, ... the chief deputy tax assessor, Bessemer Division ... shall receive an annual salary equal to Jefferson County merit system class 30, but in no event shall such salary exceed 90 percent of the annual salary received by the appointing official .... It is further provided that the provisions of Act [No.] 87-421 ... shall be extended by the enactment of this bill.’ ”
(Emphasis added.)
In 1996, Scott died, and Karen Tucker became the assistant tax assessor-Bessemer. Tucker renewed Birchfield’s appointment as chief deputy tax assessor-Bessemer.
In 1999, the Alabama Legislature enacted Act No. 99-647, Ala. Acts 1999. In pertinent part, that act provided:
“Section 2. (a) Commencing immediately following the effective date of this act, the elected Assistant Tax Assessor, Bessemer Division, of Jefferson County shall be entitled to an additional expense allowance in the amount of eleven thousand twenty dollars ($11,020) per an-num, which shall be in addition to all other expense allowances, compensation, or salary provided by law....
“(b) Beginning with the expiration of the term of the incumbent elected Assistant Tax Assessor, Bessemer Division, the annual salary for the elected Assis *561 tant Tax Assessor, Bessemer Division, shall be sixty-six thousand four hundred twenty dollars ($66,420) per annum ... and at that time, subsection (a) shall become null and void.
[[Image here]]
“Section 4. (a) Commencing on the first day of the month immediately following the effective date of this act, the Chief Deputy Tax Assessor, Bessemer Division, of Jefferson County shall be entitled to an additional expense allowance in the amount of nine thousand seven hundred twenty dollars ($9,720) per annum which shall be in addition to all other expense allowances, compensation, or salary provided by law....
“(b) Beginning with the expiration of the term of the incumbent Chief Deputy Tax Assessor, Bessemer Division, the annual salary for the Chief Deputy Tax Assessor, Bessemer Division, shall be fifty-nine thousand seven hundred seventy-eight dollars ($59,778) per annum ... and at that time, subsection (a) shall become null and void.”
On May 2, 2003, Strickland sent a memorandum to Tucker and a number of other Jefferson County officials in which he opined that Act No. 2000-108, Ala. Acts 2000, the Omnibus Compensation Act, entitled certain Jefferson County officials, including the assistant tax assessor-Bessemer, to a COLA in an amount equal to 3% of their base compensation. The list of officials who Strickland opined were entitled to COLAs by virtue of the Omnibus Compensation Act did not include the chief deputy tax assessor-Bessemer.
Birchfield testified that she received a copy of Strickland’s May 2, 2003, memorandum and that she and Tucker then began questioning Jefferson County officials regarding whether Birchfield was entitled to COLAs. Birchfield testified that she subsequently received a copy of an email that Doug Hand, who had become the Jefferson County Payroll Manager, had written Strickland on May 6, 2003. Hand noted that he was responding to a telephone call in which Strickland had informed Hand that, as a result of Strickland’s May 2, 2003, memorandum regarding COLAs, Birchfield and three other appointed employees of Jefferson County were claiming that they also were entitled to COLAs. Hand’s e-mail further stated:
“My interpretation of the applicable laws is that none of these positions is due an increase at this time as a result of your COLA opinion. Act No. 96-541 states that these positions ‘shall receive an annual salary equal to Jefferson County merit system class 30, but in no event shall such salary exceed 90 percent of the annual salary received by the appointing official.’ All of these positions reached the 90% maximum several years ago and your recent opinion regarding COLA’s has resulted in a present increase in expense allowances for the appointing officials, but not a present increase in their salary amounts.
“None of these four appointed positions in question received an expense allowance prior to the passage of Acts No. 99-647 and 2000-359 which established expense allowances of fixed dollar amounts for the remainder of this current term of office. These expense allowances are not tied to the salary or expense allowance amount being paid to the appointing officials.
“I hope this explains why none of these four appointed positions is due an increase in salary or expense allowance at this time....”
(Emphasis added.)
On May 9, 2003, Strickland forwarded a copy of Hand’s e-mail to Tucker. That same day, Tucker wrote Strickland a letter and an e-mail. In both her letter and her *562 e-mail, Tucker expressed her belief that the chief deputy tax assessor-Bessemer was entitled to COLAs. On May 27, 2008, Tucker and at least one other elected Jefferson County official sent Strickland a letter requesting that he seek an opinion from the attorney general regarding whether the chief deputy tax assessor-Bessemer and certain other appointed Jefferson County officials were entitled to COLAs.
On September 25, 2003, Tucker sent Hand an e-mail in which she requested that he “please revisit Section 4 of Act No. 87-421 and compare to Section 4 of Act No. 2000-108 and explain why the 2003 3% COLA would not apply to Chief Deputies as ‘any and all benefits that are received by Merit System Employees.’ ” Birchfield testified that she was given a copy of Tucker’s September 25, 2003, e-mail to Hand.
Hand responded to Tucker’s e-mail in an e-mail dated September 29, 2003, in which he stated:
“I have a memo in my files dated June 10,1992 from Andy Strickland giving his opinion as to whether the Chief Deputy Tax Assessor was eligible for longevity payments. In that memo, Andy states, regarding Act 87-421: ‘The compensation limitation of “ninety percent” in Section 3 applies only to “such compensation.” It does not apply to the “benefits ... including longevity payments” in Section 4.’ Also, in the memo’s conclusion, Andy writes: ‘Section 4 of Act No. 87-421 which awards “all benefits ... including longevity payments” to said Chief Deputy is “extended” by Act No. 89-1009 and such benefits, including longevity payments, are in addition to the annual salary and are not limited by the 90% cap on the “salary” of the Chief Deputy.’
“If the benefits authorized by Section 4 of Act No. 87-421 are in addition to the annual salary, as Andy states, then the 3% COLA should not be considered such a benefit because the COLA is not in addition to the annual salary, but becomes a part of the annual salary (i.e., the COLA is an adjustment to the salary; it is referred to as a ‘salary adjustment increase’ throughout the Commission resolution which authorizes it). And if the argument is now being made that the COLA should be considered a benefit authorized by Section 4, then why have we not been paying (and no one, to my knowledge, has ever argued that we should have paid) the COLA to the Chief Deputies each year in the past since, in Andy’s opinion, such benefits were not limited by the 90% cap on salary?
“Unless instructed otherwise by my supervisors or the County Attorney’s office, we will proceed with implementing the pay rates for the Chief Deputies (which do not include the 3% COLA) as stated in the email I sent to you last week.”
Birchfield testified that Tucker gave her a copy of Hand’s September 29, 2003, e-mail.
Birchfield testified that, on September 30, 2003, she received an e-mail from Tucker, which stated:
“Ok so the COLA is not considered as a ‘benefit.’ So it becomes ‘compensation.’ Now the problem is the salary is set legislatively at $59,778 and is no longer at 90%. The 90% was used as a cap only and not as a minimum salary. Do you want to respond?”
Birchfield testified that she then sent Hand an e-mail on September 30, 2003, which stated:
“Doug — It looks like the basic problem is in terminology and definition. When Andy said in his last sentence ‘are *563 in addition to the annual salary and are not limited by the 90% cap on the “salary ” of the Chief Deputy,’ he should have used the wording from the ’87 bill, Section 3, which states ‘compensation.’ I was appointed in 1987 under that enabling act and was told that my compensation would equal Merit System Grade 30 not to exceed 90% of the appointing authorities’ compensation. Other legislation passed in 89 (Act 89-1009) set the salary of the appointing authorities and the chief deputies (the chief deputies’ salary still did not exceed the 90% cap on compensation set under 87-421 but if it had we would have been limited to 90% of the compensation of the appointing authority). Act 96-541 simply eliminated the Step 5 within Class 30 and had no effect on the compensation of said Chief Deputies. Act 99-647 gave the appointing authorities and the chief deputies an expense allowance (another form of compensation) that rolled into salary and also set the salary of all effective October 1, 2003. Salary is just one form of compensation and should not be read as replacing the promise of compensation made to the Chief Deputies in Act 87-421. Act 99-647 which allowed expense allowances for the Chief Deputies as well as the Appointing Authorities clearly shows that other forms of compensation should [be] and are allowed to the Chief Deputies.
“The COLA granted to the Appointing Authorities is definitely a form of compensation even when it turns into salary at the beginning of the term. Salary being only a part of compensation, the chief Deputies should receive an allowance that takes them back up to 90% of the compensation of the Appointing Authorities.
“Act 99-647 does not have a repealing statement so it did not repeal 87-421. Acts 89-1009 and 96-541 which deal with salary of the Chief Deputies was not intended to repeal Section 3 of 87-421 because salary is clearly shown as a portion of compensation — there is no conflict there. In fact, both of these laws state that ‘It is further provided that the provisions of Act No. 87-421 and 88-946 shall be extended by the enactment of this bill,’ indicating that there was no intent to repeal anything.
“The Jefferson County Commission provides a Statement of Compensation annually to all its employees listing all the forms of compensation given to employees and stresses that salary is just a part of compensation.
“Please correct my compensation to include the salary as set under Act 99-647 and other allowances that would make the compensation equal to Grade 30 step 10 as provided under Act 87-421, not to exceed 90% of the compensation of the Assistant Tax Assessor, Karen Tucker.”
That same day, Hand sent Birchfield an e-mail stating:
“Effective October 1, 2003, your salary is set at an annual amount of $59,778 by Act # 98-647. As of that date, the amount you are paid no longer has anything to do with the amount paid to a Grade 30 in the Jefferson County Merit System nor is it affected in any way by the amount paid to the Tax Assessor-Bessemer (i.e., the maximum limitation of 90% of the salary paid to the Tax Assessor-Bessemer is no longer in effect).
“You make the statement ... that ‘Salary is just one form of compensation and should not be read as replacing the promise of compensation made to the Chief Deputies in Act 87-421.’ The issue of the amount of compensation to be paid to Chief Deputies is addressed in *564 the first sentence of Section 3 of Act #87-421 which reads as follows: ‘Said Chief Deputies shall be compensated at a rate equal to Jefferson County Merit System Class Thirty, however, in no event shall such compensation exceed ninety percent of the compensation received by the Appointing Authority.’ I don’t see how this compensation described in Section 8 could be interpreted as anything other than salary, primarily because the compensation was set at a rate equal to a Jefferson County Merit System Class (or Grade) 30 and each Grade in the Merit System has a range of salary amounts assigned to it. So if you are talking about the amount paid to a Grade 30 in the system, you are talking about a salary amount. There is no other type of compensation assigned to a Grade 30 in the system, only salary. In fact, in the subsequent acts (#89-1009 and # 96-541) related to the pay of the Chief Deputies, the term salary is used in Section 3 of those acts when discussing the issue of the amount to be paid being equal to the amount paid to a Grade 30.
“With that being the case, I believe it becomes clear that Act # 89-1009 simply changed Section 3 to read Class (i.e., Grade) 30, Step 5 instead of just Class 30; Act #96-541 changed Section 3 to once again read just Class 30; and then Act # 99-647 set a new salary amount effective October 1, 2003 which replaces the salary amounts authorized by these previous acts.
“As for the implementation of these new pay rates, my plan remains the same as stated in the last paragraph of my email sent to Karen yesterday....”
Subsequently, Birchfield received a copy of an opinion of the Alabama Attorney General, which had been requested by a member of the Alabama Legislature. In pertinent part, that opinion, which was dated July 27, 2004, stated:
“The acts state that the ‘Chief Deputy shall receive any and all benefits that are received by Merit System Employees, including longevity payments ... ’ ... It is the opinion of this Office that cost-of-living increases qualify as such a benefit. Therefore, if the Jefferson County Commission grants merit system employees in Jefferson County a cost-of-living increase, the chief deputies would be entitled to the same cost-of-living increase. This cost-of-living increase will not be subject to a limitation of 90 percent of the cost-of-living increase received by the appointing authorities. The only limitation placed on the compensation of the chief deputies is that their salary should not ‘exceed 90 percent of the annual salary received by the appointing official.’ 1996 Ala. Acts No. 96-541, 757.”
(Emphasis added.)
Birchfield testified that, after she received a copy of the attorney general’s opinion, she telephoned Jeff Sewell, who was then the assistant county attorney, and asked him whether she would be entitled to COLAs, and that Sewell told her that the attorney general’s opinion “clearly state[d] that [she] should have had [COLAs] since 1987.” Birchfield further testified that she asked Sewell what course of action she should take to obtain COLAs and that Sewell told her to notify Hand. Birchfield testified that she told Sewell that she wanted to claim the COLAs she should have received since 1987 and that Sewell told her to tell the payroll clerk that she wanted to file a claim against the county. Birchfield also testified that she communicated the substance of her conversation with Sewell to Tucker and the persons who were appointed chief deputies in Birmingham and Bessemer.
*565 On September 8, 2004, Birchfield submitted to Jefferson County a written claim for COLAs from 1987 through August 2004. Her claim totaled $98,575.49. Birchfield testified that, on September 15, 2004, Jefferson County paid her $1,640.76 as a COLA for the period October 1, 2008, through September 15, 2004. On September 28, 2004, Birchfield submitted an amended claim for COLAs for the period September 29, 1987, through September 30, 2003. In February 2005, Jefferson County paid Birchfield $1,352.40, which represented a COLA for the period October 1, 2002 through September 30, 2003. In January 2006, Birchfield submitted an amended claim for COLAs totaling $135,333.44. Birchfield later received COLAs for the periods October 1, 2005, through September 30, 2006, and October 1, 2006, through September 30, 2007.
Birchfield testified that, after receiving additional information from Jefferson County regarding the COLAs authorized by the Jefferson County Commission for the period from September 29, 1987, through September 30, 2002, she had calculated that the total COLAs she was due was $141,542.24.

Standard of Review

“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Phil-pot v. State, 843 So.2d 122, 125 (Ala. 2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Wattman v. Ro-well, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Wattman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).

Analysis

Jefferson County argues, among other things, that the trial court erred in finding in favor of Birchfield with respect to her misrepresentation claim because, Jefferson County says, the statements upon which Birchfield bases her misrepresentation claim were all expressions of opinion. In Jones v. McGujfin, 454 So.2d 509 (Ala. 1984), the McGuffins conditioned their purchase of a home on a favorable report by a structural engineer. Jones, the structural engineer, inspected the home and, although he noted several cracks in the walls, stated that “in [his] opinion” the home was in excellent structural condition. 454 So.2d at 510. The McGuffins purchased the home and soon thereafter had to spend over $12,000 to repair the foundation of the home. The McGuffins sued Jones and stated a claim of misrepresentation. The supreme court held that “mere statements of opinion are not material facts upon which actions for legal fraud can be maintained.” 454 So.2d at 512.
In the case now before us, the statutes governing Birchfield’s compensation did not specifically address the question whether she was entitled to COLAs. Consequently, until the legislature enacted an act specifically answering that question or that question was resolved by a court of last resort, see, e.g., Ex parte C.L.C., 897 So.2d 234, 236-37 (AIa.2004) (holding that *566 an appellate court accords no presumption of correctness to a trial court’s ruling on a question of law and that, on certiorari review, the supreme court accords no presumption of correctness to the legal conclusions of an intermediate appellate court), any statement purporting to answer that question was necessarily a mere expression of opinion.[2] Even the attorney general’s opinion concluding that Birch-field was entitled to COLAs was merely an advisory opinion. See Osborne v. Banks, 489 So.2d 695, 698 (Ala.1983) (“Although an attorney general’s opinion is entitled to great weight, it does not have the force and effect of law and is only advisory in nature.”). Birchfield admitted that, when Scott told her in 1987 that she would not be entitled to COLAs under Act No. 87-421, he was expressing his “opinion.” Accordingly, we conclude that the representations on which Birchfield bases her misrepresentation claim were merely expressions of opinion that will not support a misrepresentation claim and, therefore, that the trial court erred in finding in favor of Birchfield with respect to her misrepresentation claim. See Jones.
Paragraph 15 of the trial court’s judgment appears to find in favor of Birchfield with respect to her claim seeking a declaratory judgment. With respect to that ruling, Jefferson County argues, among other things, that the trial court erred because, Jefferson County says, the statute of limitations contained in § 6-2-38(m), Ala.Code 1975, bars Birchfield’s claim for declaratory relief. Section 6-2-38(m) provides:
“(m) All actions for the recovery of wages, overtime, damages, fees, or penalties accruing under laws respecting the payment of wages, overtime, damages, fees, and penalties must be brought within two years.”
The parties have not cited any caselaw specifically addressing the issue whether a COLAs constitutes “wages” within the meaning of § 6-2-38(m); however,
“[w]hen interpreting a statute, this Court is bound to look to the plain meaning of the words used by the legislature.
“ ‘ “In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’
“ ‘ “Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992))....’”
“Tolar Constr., LLC v. Kean Elec. Co., 944 So.2d 138,149 (Ala.2006).”
Cleburne County Comm’n v. Norton, 979 So.2d 766, 773 (Ala.2007). Black’s Law Dictionary 1610 (8th ed.2004) defines “wage” as follows:
“(usu[ally] pi [ural ]) Payment for labor or services, usu[ally] based on time worked or quantity produced; specifically], compensation of any employee based on time worked or output of pro *567 duction • Wages include every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, bonuses, and the reasonable value of board, lodging, payments in kind, tips, and any similar advantage received from the employer. An employer usu[ally] must withhold income taxes from wages.... ”
(Emphasis added.) Accordingly, we conclude that COLAs constitute “wages” for purposes of § 6-2-38(m). Consequently, § 6-2-38(m) barred Birchfield from recovering any COLAs she may have been owed for periods more than two years before she filed her action. Because she had been paid all COLAs she may have been owed for periods within two years before she filed her action, the trial court erred in finding in her favor with respect to the claim seeking a declaratory judgment. See § 6-2-38(m).
In summary, we reverse the judgment of the trial court insofar as it found in favor of Birchfield with respect to her claim of misrepresentation and her claim seeking a declaratory judgment, and we remand the cause to the trial court for further proceedings consistent with this opinion.[3] We pretermit discussion of the other issues and arguments presented by Jefferson County.
REVERSED AND REMANDED.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., and THOMAS, J„ concur in the result, without writings.

. This appeal was previously assigned to another judge of this court.

. Because the resolution of this appeal does not require us to reach the issue whether Birchfield was entitled to COLAs from September 29, 1987, through September 30, 2002, we express no opinion regarding that issue.

. The judgment of the trial court implicitly found in favor of Jefferson County with respect to Birchfield’s breach-of-contract claim, and that holding is supported by Alabama caselaw holding that "the salary of a public officer is not based upon a contract.” Cle-burne County Comm’n, 979 So.2d at 772. Neither party has challenged that ruling of the trial court on appeal.