BRYAN, Judge.
Rita Jones, Cynthia Dallas, Jamie Robinson, Samuel Zeigler, Carolyn Cooper, Marietta S. Gray, Lisa Hallman, Jimmy Miller, and Angela Miller (collectively referred to as “the employees”) appeal from a summary judgment in favor of the Board of Education of Elmore County (“the board”); the individual members of the board (“the board members”), in their official capacities;[1] and the superintendent of the board (“the superintendent”), in his official capacity.[2] We affirm.
*758 When the employees filed this action, each of them was working for the board as a bus driver pursuant to two separate contracts, a base contract and a school-to-school contract. Pursuant to their base contracts, the employees drove a regular bus route. On their regular bus routes, the employees picked up students at their homes in the morning and drove them to school and drove the students from school to their homes in the afternoon. On their school-to-school routes, the employees drove students who were already at one school to another school while school was in session so that the students could participate in ROTC, band, vocational training, etc.
The board deemed the regular bus routes to require 4 hours of work per school day and 20 hours of work per 5-day school week. Before the 2010-2011 school year, the board’s salary schedule listed only a single salary for bus drivers driving a regular route pursuant to their base contracts. That is, the salary schedule for bus drivers driving regular routes pursuant to their base contract did not list steps, i.e., incremental increases in salary, based on experience or other criteria. However, the board established a salary schedule with steps for bus drivers driving regular routes pursuant to their base contracts effective as of the 2010-2011 school year.
The employees drove their school-to-school routes pursuant to contracts that had a term of only one school year. Before sometime in 2008, the salary paid to an employee for driving school-to-school routes depended on the number of “runs” the employee drove and which routes he or she drove. If a route was within a single community, an employee was paid $5.30 per run, whereas, if a route was between two different communities, an employee was paid $17.22 per run. Sometime in 2008, the board changed the salary for driving school-to-school routes to $50 per day, and the employees and the board executed new contracts so providing.
Since filing this action, some of the employees have retired and no longer drive either a regular route or a school-to-school route. Some of the employees still drive a regular route but have ceased driving a school-to-school route. The rest of the employees still drive both a regular route and a school-to-school route.
The employees sued the board members and the superintendent on August 5, 2009, and, thereafter, added the board as a defendant by amendment to their complaint. As amended, the employees’ complaint sought a writ of mandamus, an injunction, and a declaratory judgment as remedies to compel the board, the board members, and the superintendent to establish and maintain a single salary schedule with steps pursuant to which the employees would be paid for driving both their regular routes and their school-to-school routes.[3] In addition, the employees sought, through those remedies, to compel the board, the board members, and the superintendent to pay them the back pay and benefits they would have received if the board had paid them according to such a schedule since the beginning of the 2006-2007 school year with the pay increases required by subsection (a)(2) of §§ 16-22-13.4 and 16-22-13.5, AIa.Code 1975, applied to the steps of the schedule. In the alternative, the employees sought, through those remedies, to compel the board, the board members, and the superintendent to determine the salary paid to the employees for driving the school-to-school routes on the same basis *759 as it determined the salary paid to them for driving their regular routes.
The board, the board members, and the superintendent conceded that this court’s construction of subsection (a)(2) of §§ 16-22-13 to -13.5, Ala.Code 1975, in Dees v. Coaker, 51 So.3d 323, 329-30 (Ala.Civ.App.2009),[4] required them to establish and maintain a salary schedule with multiple steps for the employees’ job of driving regular routes pursuant to their base contracts, and, as noted above, they established such a schedule effective as of the 2010-2011 school year. However, citing subsection (b)(3) of §§ 16-22-13.4 and 16-22-13.5, which provide, in pertinent part, that “[t]he pay raise provisions of this section shall not apply to any salary supplements granted by local boards of education....” (emphasis added), the board, the board members, and the superintendent contended that the salary paid to the employees for driving school-to-school routes was not subject to subsection (a)(2) of §§ 16-22-13.4 and 16-22-13.5 because that salary was a “salary supplement” within the meaning of subsection (b)(3) and, therefore, the language of subsection (a)(2) requiring the establishment of a salary schedule with steps and the payment of raises did not apply to the salary paid to the employees for driving their school-to-school routes. In addition, they contended that they were immune from the employees’ claims by virtue of Article I, § 14, Alabama Constitution of 1901 (“§ 14”). Finally, they contended that the employees’ claims for back pay and benefits were barred by the two-year statute of limitations contained in § 6-2-38(m), Ala.Code 1975.
The parties conducted discovery, and the trial court set the action for trial; however, on February 14, 2011, the parties filed a joint motion for (1) a continuance of the trial setting and (2) an order allowing the submission of the action for a decision by the trial court on cross-motions for a summary judgment. The trial court granted the parties’ joint motion, and the parties simultaneously filed cross-motions for a summary judgment on March 25, 2011.
On September 26, 2011, the trial court entered a summary judgment in favor of the board, the board members, and the superintendent. The trial court concluded that § 14 afforded the board immunity from the employees’ claims because the board is an agency of the State; however, the trial court concluded that § 14 did not afford the board members immunity because the employees’ claims sought to compel the board members in their capacities as State officers to comply with §§ 16-22-13.4 and 16-22-13.5. The trial court did not make a determination regarding whether § 14 afforded the superintendent immunity. The trial court concluded that § 6-2-38(m) barred the employees’ claims insofar as they accrued before August 5, 2007. In addition, the trial court concluded that the salary paid to the employees for driving school-to-school routes was a “salary supplement” and, therefore, that the requirements of subsection (a)(2) of §§ 16-22-13.4 and 16-22-13.5 regarding salary schedules with steps and pay raises did not apply to it. Finally, the trial court concluded that, although the requirement of subsection (a)(2) of §§ 16-22-13.4 and 16-22-13.5 that a salary schedule with multiple steps be established for public-school support personnel did apply to the salary the board paid the employees for driving their regular routes, the employees’ claims were moot insofar as they sought to compel the establishment of such *760 a salary schedule because the board had already established such a salary schedule.
The employees filed a post-judgment motion on October 24, 2011, and supplemented it on October 25, 2011; however, the trial court denied that motion on October 26, 2011. The employees then timely appealed to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
The employees’ first argument is puzzling. They argue that the trial court erroneously “concluded that the constitutional provisions of Article I, § 14 of the Alabama Constitution prevented [the employees] from prevailing in this action.” (The employees’ principal brief at p. 36.) However, the trial court did not conclude that § 14 prevented the employees from prevailing in this action. Although the trial court concluded that § 14 afforded the board immunity from the employees’ claims because the board was an agency of the State, the trial court concluded that § 14 did not afford the board members immunity, made no determination regarding whether § 14 afforded the superintendent immunity, and adjudicated the employees’ claims against the board members and the superintendent on the merits. The trial court did not err in concluding that the board was immune. See, e.g., Ex parte Bessemer Bd. of Educ., 68 So.3d 782, 790 (Ala.2011) (holding that § 14 afforded the Bessemer Board of Education immunity because it was an agency of the State). The trial court’s conclusion that § 14 did not afford the board members immunity and its failure to determine whether § 14 afforded the superintendent immunity were not adverse to the employees. “A party cannot claim error where no adverse ruling is made against him.” Holloway v. Robertson, 500 So.2d 1056, 1059 (Ala.1986). Therefore, the employees first argument does not warrant a reversal of the trial court’s judgment.
The employees’ second argument is that the trial court erred in concluding that § 6-2-38(m) barred the employees’ claims insofar as they accrued before August 5, 2007. Section 6-2-38(m) provides that “[a]ll actions for the recovery of wages, overtime, damages, fees, or penalties accruing under laws respecting the payment of wages, overtime, damages, fees, and penalties must be brought within two years.” The employees do not argue that § 6-2-38(m) does not apply to their *761 claims. Rather, they argue that their claims for back pay and pay raises for the entire fiscal year 2006-2007 are timely because § 16-22-13.4(b)(l) provides that the salary increases mandated for that fiscal year “shall be paid ... before the end of the applicable fiscal year” and they filed their action within two years of the end of the 2006-2007 fiscal year — i.e., September 30, 2007. However, the fact that the legislature fixed September 30, 2007, as the deadline for local boards to complete paying the salary increases for the 2006-2007 fiscal year does not mean that the legislature intended for local school boards to wait until September 30, 2007, to begin paying those salary increases. A pro rata portion of those salary increases would have been due before August 5, 2007. Therefore, we find no merit in the employees’ second argument.
The employees’ third argument is that the trial court erred in concluding that the salary they were paid for driving school-to-school routes was excluded from the salary-schedule and pay-raise requirements of subsection (a)(2) of §§ 16-22-13.4 and 16-22-13.5 because, the employees say, their salary for driving school-to-school routes was not a “salary supplement” within the meaning of subsection (b)(3) of those Code sections.
In pertinent part, subsection (a)(2) of §§ 16-22-13.4 provides:
“A five percent salary increase or a minimum of one thousand dollars ($1,000), whichever amount is greater, shall be paid to each full-time public education support worker and adult bus driver ... employed for the 2006-07 fiscal year in addition to the salary received during the 2005-06 fiscal year.... Each governing body o[r] authority shall establish and maintain a salary schedule for each class and type of employee and each step of each salary schedule shall be increased to reflect a five percent pay increase or a minimum of one thousand dollars ($1,000), whichever amount is greater, which shall be given to the person employed full-time for the 2006-07 fiscal year and each year employed full-time thereafter.... ”
(Emphasis added.) In pertinent part, subsection (a)(2) of § 16-22-13.5 provides:
“A seven percent salary increase or one thousand dollars ($1,000), whichever amount is greater, shall be paid to each public education support worker and adult bus driver ... employed for the 2007-08 fiscal year in addition to the salary received during the 2007-08 fiscal year .... Each governing body or authority shall establish and maintain a salary schedule for each class and type of employee and each step of each salary schedule shall be increased to reflect a seven percent pay increase or a minimum of one thousand dollars ($1,000), whichever amount is greater, which shall be given to the person employed full-time for the 2007-08 fiscal year and each year employed full-time thereafter. ...”
(Emphasis added.)
In Dees, 51 So.3d at 329-30, this court held:
“Our review of the statutory provisions at issue, particularly §§ 16-22-13 to -13.5, leads us to conclude that the salary schedules that the legislature has mandated for [public-education] support personnel must include multiple steps. As previously noted, subsection (a)(2) of each of those statutes provides that each local board of education ‘shall establish and maintain a salary schedule for each class and type of employee and each step of each salary schedule shall be increased to reflect’ the particular percentage pay increase mandated by each statute. Although the word ‘schedule’ is not defined in the statutes, the language *762 employed in the statutes indicates a legislative intention that the required schedules contain steps. We reach this conclusion because the language of the statutes reflects that it is ‘each step ’ of each salary schedule for support personnel to which the mandated pay increase is to be applied. Under the plain meaning of the language of the statutes, an employee whose salary schedule does not include steps would not be entitled to the pay increase provided by the statute, because it is the steps within the employee’s salary schedule to which the mandated salary increases are to be applied. Simply put, the context of the statutes, and, particularly, the structure of the language they employ, requires the word ‘schedule’ to mean more than what the defendants have provided for the plaintiffs in this case, i.e., more than a sheet of paper with a listing of jobs and a single salary amount listed next to each job. Instead, the statutes require that, for each job, the defendants must provide a schedule that includes multiple salary steps.”
Sections 16-22-18.4 and 16-22-13.5 both contain a subsection (b)(3). The pertinent language of subsection (b)(3) of each of those Code sections is identical and provides that “[t]he pay raise provisions of this section shall not apply to any salary supplements granted by local boards of education.... ” (Emphasis added.)
The employees argue that the legislature intended the term “salary supplements” in those subsections to refer to salary that local boards of education pay employees for performing extra work that is of a different kind from the work they perform in their regular jobs. The employees cite the salary supplement paid to some teachers for performing the additional job of coaching sports as an example of such a salary supplement and point out that the work performed by those teachers in their jobs as coaches is different from the work they perform in their jobs as teachers. The employees argue that they perform the same work when they drive their school-to-school routes as they perform when they drive their regular routes — in both cases, they drive a bus— and, therefore, they assert, the salary they are paid for driving their school-to-school routes is not a “salary supplement” for purposes of subsection (b)(3) of §§ 16-22-13.4 and 16-22-13.5. The board, the board members, and the superintendent, on the other hand, contend that additional salary paid to an employee for performing extra work is a “salary supplement” for purposes of §§ 16-22-13.4 and 16-22-13.5 regardless of whether the extra work is of a different kind from the work the employee performs in his or her regular job or is of the same kind as the work the employee performs in his or her regular job.
The legislature did not define the term “salary supplements” in § 16-22-13.4 or § 16-22-13.5. In IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala.1992), the supreme court stated:
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687 (Ala.1991).”
*763 The ordinary, commonly understood meaning of the word “salary” is ‘“fixed compensation paid regularly for services.’ ” Childers v. Morgan Cnty. Bd. of Educ., 465 So.2d 428, 430 (Ala.Civ.App.1985) (quoting Webster’s Seventh New Collegiate Dictionary (1976)). The pay the employees received for driving school-to-school routes was “fixed compensation paid regularly for services” and, therefore, was “salary” as that word is ordinarily and commonly understood. See Childers, 465 So.2d at 431 (holding that $160 per month paid to bus drivers for driving school-to-school routes in addition to their regular routes was “salary”).
The ordinary, commonly understood meaning of the word “supplement” is something that “completes or adds to something already existing or arranged.” Childers, 465 So.2d at 431. When the employees signed separate contracts to drive school-to-school routes, they all had existing base contracts pursuant to which they drove regular routes. The separate contracts to drive school-to-school routes stated that they were for one school year only. While this action was pending, some of the employees ceased driving school-to-school routes but continued driving regular routes pursuant to their base contracts. Clearly, when the employees signed contracts to drive school-to-school routes, those contracts were for extra work that was in addition to the work they performed pursuant to their existing base contracts, and the salary they were paid for driving school-to-school routes was salary they were paid in addition to the existing salary they were paid for driving their regular routes pursuant to their base contracts. Thus, according to the ordinary, commonly understood meanings of the words “supplement” and “salary,” the salary the employees were paid for driving the school-to-school routes was supplemental salary. See Childers, 465 So.2d at 432 (holding that $160 per month paid to bus drivers for driving school-to-school routes in addition to their regular routes was “a supplemental salary for the extra duties performed by the [bus drivers]”). There is no language in §§ 16-22-13.4 or 16-22-13.5 indicating that a supplemental salary is not a “salary supplement” as that term is used in subsection (b)(3) if the extra work for which the supplemental salary is paid is the same kind of work as that for which the regular salary is paid. Accordingly, we conclude that the salary the employees were paid for driving school-to-school routes constituted a “salary supplement” for purposes of subsection (b)(3) of §§ 16-22-13.4 and 16-22-13.5. Therefore, we find no merit in the employees’ third argument.
The employees fourth and final argument is that the trial court erred in entering a summary judgment in favor of the board, the board members, and the superintendent because, they say, they should have been paid for driving their school-to-school routes on the same basis as they were paid for driving their regular routes and the board’s refusal to pay them on that basis was arbitrary and capricious. However, they have not cited any legal authority in support of that argument. “[I]t is well settled that a failure to comply with the requirements of Rule 28(a)(10)[, Ala. RApp. P.,] requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments. Ex parte Showers, 812 So.2d 277, 281 (Ala.2001).” State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005). Because the employees have not cited any legal authority in support of their fourth argument, we will not consider it. Id.
*764 Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and MOORE, J., concur in the result, without writings.

. The board members are Larry Teel, Kitty Graham, Joey Holley, Robert Lusk, Jr., Mary Ann McDonald, Mark Nelson, and Patrycya Tucker.

. The superintendent is Jeffery Langham.

. In Dees v. Cooker, 51 So.3d 323, 329-30 (Ala.Civ.App.2009), this court held that the language of subsection (a)(2) of §§ 16-22-13 to -13.5 required local school boards to establish and maintain salary schedules with steps for public-education support personnel.

. See supra note 3.